**No. 2022-2207**

## In the United States Court of Appeals
## For the Federal Circuit

INTELLECTUAL TECH LLC,

*Plaintiff - Appellant*

v.

ZEBRA TECHNOLOGIES CORPORATION,

*Defendant - Appellee*

Appeal from the United States District Court for the Western District of Texas
No. 19-cv-628, Honorable Alan D. Albright

### RESPONSE IN OPPOSITION TO APPELLANT'S SECOND MOTION FOR EXTENSION OF TIME TO FILE OPENING BRIEF

MORGAN, LEWIS & BOCKIUS LLP
  Amanda S. Williamson
  James J. Kritsas
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000

MORGAN, LEWIS & BOCKIUS LLP
  Brent A. Hawkins
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1449

MORGAN, LEWIS & BOCKIUS LLP
  William R. Peterson
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5000

*Counsel for Appellee*

CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Numbers** | 2022-2207 |
| **Short Case Caption** | *Intellectual Tech LLC v. Zebra Technologies Corporation* |
| **Filing Party/Entity** | Appellee / Zebra Technologies Corporation |

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

/s/ Amanda S. Williamson
Amanda S. Williamson
*Counsel for Appellee*
*Zebra Technologies Corporation*

Dated: December 9, 2022

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Zebra Technologies Corporation | Not Applicable | BlackRock Inc. |

1

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

| Calvin M. Brien | Hersh H. Mehta (Formerly of Morgan, Lewis & Bockius LLP) | Elizabeth M. Chiaviello |
| Jason C. White | Kandis C. Gibson | Stephanie L. Roberts |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

*Intellectual Tech LLC v. Zebra Techs. Corp.*, No. 6:22-cv-00788 (W.D. Tex.)

**6. Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable

In accordance with Federal Circuit Rule 26(b), Appellee Zebra Technologies Corporation respectfully files this response to Appellant Intellectual Tech LLC's ("IT") request for a second 30-day extension of the time within which it may file a principal brief.

Appellee ordinarily would not object to an extension request. The complicating circumstance here is that IT unconditionally represented to the district court that it would withdraw this appeal and relied on its intention in opposing Zebra's motion to dismiss a later filed case involving the same patent and asserted claims. *See* Ex. A at 3 ("Intellectual Tech is moving to dismiss the appeal once it has Zebra's position and will inform the Court when that is done. As a result, the Court should deny Zebra's duplicative litigation argument as moot[.]"). As its extension motion now makes clear, IT has changed its mind and wishes to continue the appeal (or at least preserve the possibility of doing so). IT should not be permitted to represent to the district court that the appeal is being withdrawn while preserving the appeal in this Court.

Dated: December 9, 2022

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Amanda S. Williamson

MORGAN, LEWIS & BOCKIUS LLP
Amanda S. Williamson
James J. Kritsas
110 North Wacker Drive
Chicago, IL 60606

MORGAN, LEWIS & BOCKIUS LLP
William R. Peterson
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5000

3

(312) 324-1000

MORGAN, LEWIS & BOCKIUS LLP
     Brent A. Hawkins
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1449

***Counsel for Appellee Zebra Technologies Corporation***

# No. 2022-2207

## In the United States Court of Appeals
## For the Federal Circuit

INTELLECTUAL TECH LLC,
*Plaintiff - Appellant*

v.

ZEBRA TECHNOLOGIES CORPORATION,
*Defendant - Appellee*

Appeal from the United States District Court for the Western District of Texas
No. 19-cv-628, Honorable Alan D. Albright

### DECLARATION OF AMANDA S. WILLIAMSON IN SUPPORT OF OBJECTION TO MOTION FOR EXTENSION OF TIME TO FILE BRIEF

1.     I am a partner at Morgan, Lewis & Bockius LLP and counsel to Appellee Zebra Technologies Corporation in this appeal.  I am submitting this declaration of counsel in support of Zebra's option to Appellant Intellectual Tech LLC's second motion for a 30-day extension of time to file its principal brief.

2.     On September 14, 2022, this appeal was docketed.

3.     Intellectual Tech filed a first motion for an extension on November 10, 2022.

4.     Pursuant to Circuit Rule 31(a)(2), Intellectual Tech's principal brief is currently due on or before December 14, 2022.

5.    I am attaching as Exhibit A, a true and correct copy of the Joint Pretrial Order filed on October 14, 2022 in *Intellectual Tech LLC v. Zebra Techs. Corp.*, No. 6:22-cv-00788, Dkt. No. 25.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 9, 2022                     Respectfully submitted,

                                            MORGAN, LEWIS & BOCKIUS LLP

                                            By:   */s/ Amanda S. Williamson*
MORGAN, LEWIS & BOCKIUS LLP                 MORGAN, LEWIS & BOCKIUS LLP
    Amanda S. Williamson                        William R. Peterson
    James J. Kritsas                         1000 Louisiana Street, Suite 4000
110 North Wacker Drive                      Houston, TX 77002
Chicago, IL 60606                           (713) 890-5000
(312) 324-1000

MORGAN, LEWIS & BOCKIUS LLP
    Brent A. Hawkins
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1449

**Counsel for Appellee Zebra Technologies Corporation**

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d) and 32(g), the undersigned hereby certifies that this response complies with the type-volume limitation of Circuit Rule 27(d).

1. Exclusive of the accompanying documents as authorized by Fed. R. App. P. 27(a)(2)(A) and the exempted portions of the response as provided by Fed. R. App. P. 27(d)(2) and 32(f), the response contains 179 words.

2. The response has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font as provided by Fed. R. App. P. 32(a)(5)-(6).  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

*/s/ Amanda S. Williamson*
Amanda S. Williamson
*Counsel for Appellee*
*Zebra Technologies Corporation*

Dated: December 9, 2022

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **INTELLECTUAL TECH LLC, ONASSET INTELLIGENCE, INC., and MAIN STREET CAPITAL CORPORATION** | |
| **Plaintiffs,** | **Civil Action No. 6:22-cv-00788-ADA** |
| **v.** | |
| **ZEBRA TECHNOLOGIES CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

---

**PLAINTIFFS' RESPONSE TO ZEBRA'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

III. LEGAL STANDARDS ...................................................................................... 4

IV. ARGUMENTS AND AUTHORITY....................................................................... 4

    A.  Intellectual Tech has Constitutional Standing. ....................................................... 4

        1.  Intellectual Tech has all exclusionary rights; Zebra ignores controlling Texas law on contract interpretation..........................................................5

        2.  Federal Circuit casts doubt on *Uniloc* rulings on standing. ......................10

        3.  Main Street's supposed ability to license the '247 Patent does not deprive Intellectual Tech of standing.................................................................11

        4.  Zebra cannot assert a breach of a contract to which it is not a party. ........12

    B.  In the Alternative, Intellectual Tech and Main Street Combined have Constitutional Standing. .................................................................................................. 13

    C.  In the Alternative, the Addition of OnAsset Ensures Prudential Standing........... 15

    D.  The First Amended Complaint is the Operative Complaint by Rule.................... 15

    E.  Intellectual Tech's Complaint Does Not Subvert the Court's Prior Orders. ........ 16

    F.  Court Should Deny Zebra's Duplicative Litigation Argument as Moot. ............. 19

    G.  Any Dismissal Should be Without Prejudice....................................................... 19

V.  CONCLUSION................................................................................................ 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Lab'ys v. Diamedix Corp.*,
    47 F.3d 1128 (Fed. Cir. 1995)..............................................................13

*Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*,
    604 F.3d 1354 (Fed.Cir.2010)..............................................................13

*AntennaSys Inc. v. AQYR Techs., Inc.*,
    976 F.3d 1374 (Fed. Cir. 2020)..............................................................14

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
    434 F.3d 1336 (Fed. Cir. 2006)..............................................................11

*Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*,
    No. 15-CV-04525-EMC, 2016 WL 1623920 (N.D. Cal. Apr. 25, 2016).........................16, 17

*Beneplace, Inc. v. Pitney Bowes, Inc.*,
    No. A-15-CV-65-LY-ML, 2016 WL 11582933 (W.D. Tex. Nov. 4, 2016).......................5, 9

*Casey v. Marathon Petroleum Co., LP*,
    No. SA-19-CV-00732-OLG, 2019 WL 11527904 (W.D. Tex. Aug. 6, 2019).......................14

*Davis–Lynch, Inc. v. Hilcorp Energy Co.*,
    No. 6:09–CV–168, 2009 WL 10659687 (E.D. Tex. Nov. 18, 2009)......................2, 16, 17, 18

*DeWitt Cnty. Elec. Coop., Inc. v. Parks*,
    1 S.W.3d 96 (Tex. 1999)..............................................................5

*EMA Electromechanics, Inc. v. Siemens Corp.*,
    No. 6:21-CV-1001-ADA, 2022 WL 1241967 (W.D. Tex. Apr. 26, 2022) .......................3, 19

*Evident Corp. v. Church & Dwight Co.*,
    399 F.3d 1310 (Fed.Cir.2005)..............................................................13

*Finjan, Inc. v. Blue Coat Sys., LLC*,
    230 F. Supp. 3d 1097 (N.D. Cal. 2017) ..............................................................17

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
    No. 12 C 3229, 2013 WL 361810 (N.D. Ill. Jan. 30, 2013) ..............................2, 16

*Haddad Bros. Inc. v. Little Things Mean A Lot, Inc.*,
    No. 00CIV.0578(AGS), 2000 WL 1099866 (S.D.N.Y. Aug. 4, 2000) ..................................15

*Icon-IP PTY Ltd. v. Specialized Bicycle Components, Inc.*,
No. 13-CV-03677-JST, 2013 WL 10448869 (N.D. Cal. Oct. 22, 2013)................................17

*Intellectual Property Development, Inc. v. TCI Cablevision of Cal., Inc.*,
248 F.3d 1333 (Fed. Cir. 2001)...........................................................................................4

*Intellectual Tech LLC v. Zebra Tech. Corp.*,
Case No. 6:19-cv-00628-ADA (W.D. Tex.)......................................................................2, 3

*Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*,
295 S.W.3d 650 (Tex. 2009) .................................................................................... *passim*

*Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*,
925 S.W.2d 565 (Tex.1996)..................................................................................................5

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019)....................................................................................6, 9, 13

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)................................................................................. *passim*

*Neria v. DISH Network, LLC*,
No. 6-19-CV-00430-ADA, 2019 WL 8331600 (W.D. Tex. Oct. 28, 2019).............................4

*Orion IP, LLC v. Home Depot USA, Inc.*,
No. 2:05-CV-306, 2005 WL 8161153 (E.D. Tex. Oct. 7, 2005) ............................................18

*Perry v. Brassell*,
No. W-18-CV-00062-ADA, 2018 WL 5733173 (W.D. Tex. Oct. 18, 2018)..........................20

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
No. CIV. 08-309-JJFLPS, 2009 WL 2016436 (D. Del. July 9, 2009).............................18, 19

*Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*,
No. 3:12-CV-0149-D, 2013 WL 3834626 (N.D. Tex. July 25, 2013).....................................7

*Schering Corp. v. Roussel-UCLAF*
SA, 104 F.3d 341 (Fed. Cir. 1997) .....................................................................................14

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
959 F.3d 1065 (Fed. Cir. 2020)............................................................................................4

*Tawes v. Barnes*,
340 S.W.3d 419 (Tex. 2011)...........................................................................................5, 12

*Uniloc USA, Inc. v. ADP, LLC*,
772 F. App'x 890 (Fed. Cir. 2019) .....................................................................................12

*Univ. of Pittsburgh v. Varian Med. Sys., Inc.*,
  569 F.3d 1328 (Fed. Cir. 2009)...................................................................................19, 20

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am.*,
  LLC, No. CV 14-339-RGA, 2014 WL 3885939 (D. Del. Aug. 6, 2014) ....................16, 17, 18

*Williams v. Morris*,
  614 F. App'x 773 (5th Cir. 2015) ...................................................................................19, 20

## Statutes

35 U.S.C. § 154 .................................................................................................................9

35 U.S.C. § 271 .................................................................................................................9

35 U.S.C. § 281 .................................................................................................................4

## Other Authorities

*Fed. Cir. Questions Axed Standing In Uniloc's Google Suit*, law360.com, Sept. 6,
  2022, https://www.law360.com/articles/1527333/fed-circ-questions-axed-
  standing-in-uniloc-s-google-suit ...............................................................................10, 11

Federal Rules of Civil Procedure 72 .................................................................................15

3 Tex. Jur.3d § 26 .............................................................................................................7

## I.     INTRODUCTION

"Intellectual Tech has title and all exclusionary rights to U.S. Patent No. 7,233,247." Dkt. 1-4 at 3. Intellectual Tech thus falls within *Morrow's* first category of plaintiffs and has standing. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-41 (Fed. Cir. 2007) ("Unquestionably, a patentee who holds all the exclusionary rights and suffers constitutional injury in fact from infringement is one entitled to sue for infringement in its own name."). Intellectual Tech and Main Street entered into the Clarification of Rights Agreement ("CRA") on July 6, 2022 to respond to the Court's order on standing and to make clear that the "parties' intent is for Intellectual Tech to have and to maintain constitutional standing to enforce the '247 Patent absent foreclosure by Main Street." Dkt. 1-4 at 3.[1] To effect that intent, the parties clarified that "Section 6 of the Security Agreements does not assign Main Street any exclusionary rights to the '247 Patent." *Id.* at 2-3. The parties also clarified that if Main Street had any exclusionary or other rights, it expressly assigned them back to Intellectual Tech. *Id.* Under Texas law, the Court is required to interpret the agreement according to the parties' intent. *See, e.g.*, *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.,* 295 S.W.3d 650, 657–58 (Tex. 2009).

Zebra's Motion rests on the Court's prior orders that no longer control standing given the CRA. The Court should thus deny Zebra's Motion.

If the Court interprets the relevant agreements against the express intent of the parties and finds that Intellectual Tech lacks standing, the First Amended Complaint pleads that Intellectual Tech and Main Street together have standing, in the alternative. In that scenario, Intellectual Tech and Main Street together fall in *Morrow's* second category of plaintiffs and have standing. *Morrow*, 499 F.3d at 1340.

---

[1] No one disputes that Main Street has not foreclosed.

Zebra previously argued that OnAsset was a necessary party for prudential standing purposes. Dkt. 9 at 12-15. Intellectual Tech disagrees. Dkt. 13 at 13-15. It appears Zebra has dropped that argument, but OnAsset was added, in the alternative, to satisfy any prudential standing concerns.[2]

There is nothing improper about Intellectual Tech including products and theories the Magistrate Judge excluded in a prior case in a new complaint. First, Intellectual Tech objected to Magistrate Judge Gilliland's order excluding certain products and theories, but the Court did not rule on those objections, as required under the Local Rules, before dismissing the case without prejudice. IT-1[3] Dkt. 143. Because the Court never considered Intellectual Tech's objections, as required, and because the Court dismissed the first case without prejudice and without ruling on the merits, Magistrate Judge Gilliland's order should have no preclusive effect here. But even if Magistrate Judge Gilliland's order stands, the weight of authority is on Intellectual Tech's side. Courts around the country routinely allow plaintiffs to file a new case with products or theories excluded in an earlier case. *See, e.g.*, *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 12 C 3229, 2013 WL 361810, at *4 (N.D. Ill. Jan. 30, 2013); *Davis–Lynch, Inc. v. Hilcorp Energy Co.,* No. 6:09–CV–168, 2009 WL 10659687, at *2-3 (E.D. Tex. Nov. 18, 2009). Especially where, as here, there is no ruling on the merits. That is in part because, "[b]y excluding the additional products, the Court simply sought to preserve the focus and bounds of the [first case] so that it could proceed efficiently to trial. … forever barring [the plaintiffs'] claim for being a collateral attack would be inconsistent and unfair." *Davis–Lynch*, 2009 WL 10659687, at *2-3. The same is true here.

Finally, Intellectual Tech proposed to Zebra that the parties stipulate to dismissal of the

---

[2] Once the Court decides Zebra's Motion, any unnecessary parties can be dismissed accordingly.
[3] Docket entries to *Intellectual Tech LLC v. Zebra Tech. Corp.*, Case No. 6:19-cv-00628-ADA (W.D. Tex.) are denoted with an "IT-1."

appeal. As of this filing, Zebra has not responded. In any event, Intellectual Tech is moving to dismiss the appeal. So there will soon be no issue with duplicative litigation or claim splitting. Zebra's Motion will then be moot on that issue as this Court recently found in a similar case. *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-CV-1001-ADA, 2022 WL 1241967, at *4–5 (W.D. Tex. Apr. 26, 2022).

At bottom, Zebra's arguments are no more than an improper effort to convert a dismissal without prejudice to a dismissal with prejudice. The Court should deny Zebra's Motion and set this matter on a course for a resolution on the merits.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Intellectual Tech filed *Intellectual Tech LLC v. Zebra Tech. Corp.*, Case No. 6:19-cv-00628-ADA (W.D. Tex.) on October 22, 2019. IT-1 at Dkt. 1. Zebra moved to dismiss for lack of standing on January 6, 2021. IT-1 at Dkt. 61-1. The Court denied Zebra's Motion, finding that "Intellectual Tech LLC is the rightful owner of the '247 patent, retains the right to enforce that patent, and thus has constitutional and statutory standing to bring a patent infringement suit against Zebra Technologies Corporation." IT-1 at Dkt. 75. Zebra renewed its request in a Motion for Summary Judgment on February 9, 2022. IT-1 at Dkt. 116. The Court then reversed its prior order and dismissed the case without prejudice for lack of standing. IT-1 at Dkt. 144. Intellectual Tech moved for reconsideration (Dkt. 147), but the Court declined to reconsider. IT-1 Dkt. 153.

Following the Court's dismissal order, Intellectual Tech entered into the CRA with Main Street. Dkt. 1-4 at 3. The parties entered into the CRA to respond to the Court's order on standing and to clarify the parties' rights and how to interpret the parties' various agreements. *Id*.

Intellectual Tech then filed suit on July 15, 2022. Dkt. 1. Zebra moved to dismiss. Dkt. 9. Intellectual Tech responded to Zebra's Motion and filed a First Amended Complaint. Dkt. 13 and

14. Zebra renewed its Motion to Dismiss. Dkt. 19. Intellectual Tech now files this response to address the arguments raised in Zebra's renewed Motion to Dismiss.

## III. LEGAL STANDARDS

The Court is familiar with the standards governing a Motion to Dismiss under Fed. R. Civ. P. 12. *See, e.g.*, *Neria v. DISH Network, LLC*, No. 6-19-CV-00430-ADA, 2019 WL 8331600, at *1 (W.D. Tex. Oct. 28, 2019) ("A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.").

"As long as a plaintiff alleges facts that support an arguable case or controversy under the Patent Act, the court has both the statutory and constitutional authority to adjudicate the matter." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020). A plaintiff satisfies that condition where it alleges that it "is the owner by assignment of the [asserted] patent and [that the defendant] infringed that patent." *Id*. In other words, "title in the patent" "confers constitutional standing on the [patentee] to sue another for patent infringement in its own name." *Intellectual Property Development, Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001); *see also* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent.").

## IV. ARGUMENTS AND AUTHORITY

### A. Intellectual Tech has Constitutional Standing.

Intellectual Tech and Main Street entered into the CRA to make it abundantly clear that Intellectual Tech has constitutional standing to bring and maintain this lawsuit. Because of the CRA (if not the prior agreements), Intellectual Tech is the patentee, holds all exclusionary rights to the patent-in-suit, and suffers a constitutional injury in fact from Zebra's infringement. Intellectual Tech thus may sue for infringement on its own.

1. **Intellectual Tech has all exclusionary rights; Zebra ignores controlling Texas law on contract interpretation.**

Under Texas law, a "contract's overriding purpose is to capture the parties' intent, meaning [the Court] must construe it in light of how the parties meant to construe it." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.,* 295 S.W.3d 650, 657–58 (Tex. 2009); *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999) (It is improper to construe the language of an agreement under Texas law to defeat the parties' intent.). "[A] court should construe a contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served." *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex.1996). "When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (internal citations and quotations omitted). "The court reiterates that '[w]here an unambiguous writing has been executed between the parties, the courts will enforce the intention of the parties as expressed or apparent in the writing.'" *Beneplace, Inc. v. Pitney Bowes, Inc.*, No. A-15-CV-65-LY-ML, 2016 WL 11582933, at *7 (W.D. Tex. Nov. 4, 2016)) (*quoting Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982)). Zebra's Motion ignores all this law, even though it was included in the First Amended Complaint as part of the basis for Intellectual Tech's standing allegations. Dkt. 14 at 5-7.

Zebra probably ignored it because granting Zebra's motion would violate all these long-standing legal principles. The "parties' intent" in entering the CRA "is for Intellectual Tech to have and to maintain constitutional standing to enforce the '247 Patent absent foreclosure by Main Street." Dkt. 1-4 at 3. That is what Intellectual Tech and Main Street sought to accomplish through the CRA. Zebra cherry-picks certain parts of the CRA while ignoring the agreement as a whole.

And Zebra's arguments, if accepted, would defeat the express intent of the parties, which is improper. Zebra's interpretation of the CRA and the other agreements should be rejected out of hand.

The CRA establishes Intellectual Tech's constitutional standing. As the Federal Circuit explains, those who possess "exclusionary rights" in a patent have constitutional standing. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-41 (Fed. Cir. 2007). "Exclusionary rights" involve the ability to exclude others from practicing an invention or to "forgive activities that would normally be prohibited under the patent statutes" through granting a license, for example. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (*citing Morrow*, 499 F.3d at 1342). In its prior order, the Court held that Intellectual Tech's default under the Security Agreement transferred "exclusionary rights," including the ability to "forgive activities that would normally be prohibited under the patent statutes" to Main Street. IT -1 at Dkt. 144 at 12-13, n.4. Intellectual Tech and Main Street disagree with the Court's interpretation of their agreements. But to address the perceived defects in standing, Main Street and Intellectual Tech entered the CRA to clarify or amend the prior agreements 1) to make clear that Main Street has no exclusionary rights under the agreements, 2) to assign or transfer any such exclusionary rights Main Street has (or had) to Intellectual Tech, and ultimately 3) to make clear that absent foreclosure Intellectual Tech has and will retain standing to enforce the '247 patent on its own.

The CRA includes at least the following relevant provisions. First, the parties agree and declare that "Intellectual Tech has title and all exclusionary rights." Dkt. 1-4 at 2. To ensure this Main Street assigned "any exclusionary rights, other rights, title, or interests Main Street has to the '247 Patent to Intellectual Tech." *Id.* at 3. That means Intellectual Tech has constitutional standing. According to the Federal Circuit,

> There are three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits: those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit. The first category includes plaintiffs that hold all legal rights to the patent as the patentee or assignee of all patent rights—the entire bundle of sticks. *Unquestionably, a patentee who holds all the exclusionary rights and suffers constitutional injury in fact from infringement is one entitled to sue for infringement in its own name.* … When a party holds all rights or all substantial rights, it alone has standing to sue for infringement.

*Morrow*, 499 F.3d at 1339–40 (emphasis added). Intellectual Tech is the patentee and the CRA makes clear that Intellectual Tech has "all exclusionary rights." Thus, Intellectual Tech falls within the first category of plaintiffs and has standing. *Morrow*, 499 F.3d at 1339–40.

Second, the CRA clarifies that, contrary to the Court's prior orders, "Section 6 of the Security Agreement does not assign Main Street any exclusionary rights." Dkt. 1-4 at 2. And the parties intend that unless Main Street forecloses, no exclusionary rights are transferred to Main Street. *Id.* The clarification reflects the parties' intent for how to construe Section 6 of the Security Agreement. Again, the Court "must construe it in light of how the parties meant to construe it." *Intercontinental,* 295 S.W.3d 650, 657–58. This clarification (or amendment of Section 6 of the Security Agreement) also matches Texas law in that an attorney-in-fact does not have substantive rights under Texas law. "A power of attorney is a written instrument by which one person, the principal, appoints another as agent and authorizes the agent to perform certain specified acts on behalf of the principal." 3 Tex. Jur.3d § 26 (citing *Eastham v. Hunter,* 102 Tex. 145, 114 S.W. 97 (1908); *Comerica Bank–Texas v. Tex. Com. Bank Nat'l Ass'n,* 2 S.W.3d 723 (Tex.App.1999, pet. denied)). "That is, it does not itself provide the agent with a substantive right as an assignment does." *Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC,* No. 3:12-CV-0149-D, 2013 WL 3834626, at *2–3 (N.D. Tex. July 25, 2013). The CRA clarifies the parties' intention that Main Street's option to serve as attorney-in-fact for Intellectual Tech does not transfer any substantive

rights or exclusionary rights to Main Street absent foreclosure or assignment, which has not happened. Dkt. 1-4 at 2. That is how Section 6 must be read given the express language of the CRA. For the Court to construe it otherwise would defeat the intent of the parties and violate long-standing legal precedent.

Third, as noted above, the "parties' intention is for Intellectual Tech to have and to maintain constitutional standing to enforce the '247 Patent absent foreclosure by Main Street." It could not be clearer that the parties intend Intellectual Tech to have and maintain standing and entered into the CRA with the express intent to effectuate Intellectual Tech's constitutional standing to refile and prosecute the case moving forward. The whole purpose of the agreement was expressly to respond to the Court's reasoning in the prior case so that Intellectual Tech could proceed in a refiled case. Dkt. 1-4 at 3 ("This agreement clarifies that the Order is contrary to the true intentions of the parties as expressed in the Security Agreements."). Yet Zebra argues that the Court should find that such an express agreement failed to do the sole thing it was meant to do. That cannot be the proper outcome.

Finally, to ensure Intellectual Tech has constitutional standing, Main Street assigned "any exclusionary rights, other rights, title, or interests Main Street has to the '247 Patent to Intellectual Tech." Dkt. 1-4 at 3. As explained in the CRA, the parties do not believe Main Street has (or ever had) any such "exclusionary rights, other rights, title, or interests." But given the Court's prior order and because the Court may still disagree, Main Street expressly assigned any such rights back to Intellectual Tech. At that point, Intellectual Tech has "the entire bundle of sticks," "holds all the exclusionary rights," "suffers constitutional injury in fact from infringement," and is "entitled to sue for infringement in its own name." *Morrow*, 499 F.3d at 1339–40. Given the CRA, no default can transfer those rights back to Main Street unless Main Street forecloses, which it has

not done.

Zebra's Motion makes two points, both are irrelevant. Zebra cites the Court's prior rulings, but the Court's interpretation of the Security Agreement no longer controls given the CRA. The CRA clarified (in effect amending) the Security Agreement. The CRA could not have made it clearer— "Section 6 of the Security Agreements does not assign Main Street any exclusionary rights to the '247 Patent." Dkt. 1-4 at 2. Under Texas law, the Court "must construe [the agreement] in light of how the parties meant to construe it." *Intercontinental,* 295 S.W.3d at 657–58; *Beneplace,* 2016 WL 11582933, at *7 ("The court reiterates that '[w]here an unambiguous writing has been executed between the parties, the courts will enforce the intention of the parties as expressed or apparent in the writing.'") (*quoting Watkins v. Petro-Search, Inc.,* 689 F.2d 537, 538 (5th Cir. 1982)).

The CRA waived Main Street's rights the Court found Main Street had in the prior order. The Court held Main Street had "exclusionary rights" under the Security Agreement given Intellectual Tech's default. But Main Street made clear in the CRA that the Security Agreement does no such thing. Even if it did, Main Street assigned those rights back to Intellectual Tech and waived them going forward absent foreclosure or assignment. This is an obvious waiver of any rights that the Court held that Main Street had. And contrary to Zebra's motion, the waiver is in a writing signed by Main Street—the CRA itself. And finally, the waiver is explicit and specific as to the purpose— "for Intellectual Tech to have and to maintain constitutional standing to enforce the '247 Patent absent foreclosure by Main Street." Dkt. 1-4 at 3. Thus, absent foreclosure, Main Street has waived any exclusionary rights going forward, including "the legal right to exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention." *See* 35 U.S.C. § 154; 35 U.S.C. § 271 (describing permitted and

prohibited actions with respect to the exclusionary rights). *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) (*citing Morrow*, 499 F.3d at 1342 and discussing exclusionary rights, like the right to license).

Zebra's second argument about Main Street's assignment of rights fails for the same reason. Even if Main Street had such rights, Main Street makes clear in the CRA that those rights were assigned to Intellectual Tech to realize the parties' intention that Intellectual Tech have and to maintain constitutional standing to enforce the '247 Patent unless Main Street foreclosed. Dkt. 1-4 at 3. Zebra argues that if "any of Main Street's then-current rights to license the '247 Patent were transferred to IT, such rights would have automatically transferred back to Main Street as a result of IT's continuing defaults under the Loan Agreement and ███████████████."[4] Motion at 13. If that was ever the case, it is no longer true after the CRA, because default alone will not transfer any exclusionary rights from Main Street to Intellectual Tech. To hold otherwise would defeat the parties' express intent and violate the Court's obligation to construe the agreements "in light of how the parties meant to construe it." *Intercontinental,* 295 S.W.3d at 657–58.

### 2. Federal Circuit casts doubt on *Uniloc* rulings on standing.

Zebra's motion and the Court's prior orders are premised, not on Federal Circuit law, but on the District Court rulings in the *Uniloc* cases. *See, e.g.*, IT-1 at Dkt. 144 at 13 ("the Court follows the *Uniloc* opinions …"). But the Federal Circuit recently held oral argument on those cases and cast serious doubt on whether they were correctly decided. *See, e.g.*, Ryan Davis, *Fed. Cir. Questions Axed Standing In Uniloc's Google Suit*, law360.com, Sept. 6, 2022, https://www.law360.com/articles/1527333/fed-circ-questions-axed-standing-in-uniloc-s-google-

---

[4] It is not clear what ███████████████ Zebra refers to, but there is no default under the current, ███████████████ in operation. IT-1 at Dkt. 116-9.

████████████

suit. As to the very argument Zebra makes here, "U.S. Circuit Judge Todd Hughes told Bagatell that Google's argument assumes that a patent owner loses their exclusive rights when they give someone else the ability to potentially sublicense the patents, '***but where have we ever said that?***'"[5] *Id.* (emphasis added). As Judge Lourie made clear during the hearing, "while the deal may have allowed Fortress to sublicense the patents, Uniloc never agreed 'not to enforce its right to sue' and didn't give Fortress a right to the patents 'that was tantamount to an assignment. ***So they didn't deprive themselves of the right to sue***.'" *Id.* (emphasis added). Both points are true here. While the Fed. Cir. has yet to its opinion, the oral argument should give the Court pause in relying on the *Uniloc* cases here. IT-1 at Dkt. 144 at 13 (The Court previously admitted they were an "extension" of Federal Circuit law). And that is especially so when it means relying on those cases, as Zebra asks, to defeat the parties' express agreement in the CRA that Intellectual Tech has all exclusionary rights and standing to enforce the '247 Patent.

### 3. Main Street's supposed ability to license the '247 Patent does not deprive Intellectual Tech of standing.

Even if Main Street had a right to license, that would not deprive Intellectual Tech, the patent owner, of standing. As noted in Judge Hughes' quote above, the Federal Circuit has never held that a patent owner loses constitutional standing to enforce its own patents whenever someone else theoretically could grant a license. To the contrary, the Court has held that patent owners have standing even where a licensee has a "virtually unfettered right to sublicense" the patent in suit. *Aspex Eyewear, Inc. v. Miracle Optics, Inc*., 434 F.3d 1336 (Fed. Cir. 2006). In that case, like this one, the plaintiff "was the owner of the [asserted] patent when the original complaint was filed." *Id.* at 1337-38. In that case, like this one, the defendant argued that another party had a "virtually

---

[5] An audio transcript can be found at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1555_09062022.mp3.

unfettered right to sublicense*"* the patent. *Id.* at 1342. There, the Federal Circuit held that the licensing right was irrelevant to the patentee's standing because "[t]he essential issue regarding the right to sue on a patent is who owns the patent*." Id.* at 1341. Because the plaintiff "was the owner of the patent when the complaint was filed," the Court held, it was "entitled to sue." *Id.* at 1343; *see id.* at 1337-38 (the plaintiff "was the owner of the [asserted] patent when the complaint was filed, and thus . . . had standing to sue"). When this suit was filed, the licensee in *Aspex* had the same effective ability to license that Zebra alleges Main Street has here. *See* 434 F.3d at 1338-44. The Federal Circuit still held that the patent owner, like Intellectual Tech, had standing to sue.

Everyone agrees that Intellectual Tech owns the '247 Patent and has at all relevant points. It thus has a right to sue for infringement, regardless of any supposed right Main Street has to grant a license.

### 4. Zebra cannot assert a breach of a contract to which it is not a party.

This case is analogous to *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890 (Fed. Cir. 2019). There, ADP alleged a default "automatically triggered" a provision that "gave IBM the right to 'license'" the patents-in-suit to third parties. *Id.* at 894. Like Zebra here, the defendants argued that "Uniloc thus could no longer wholly exclude [the defendants] from practicing the patents" and "lacked constitutional standing." *Id.* The Federal Circuit rejected that argument. The defendants "predicated [their argument] on the existence of a breach of the 2016 Uniloc-IBM Agreement." *ADP*, 772 F. App'x at 895. But they "ha[d] not shown that IBM . . . has asserted a right to sublicense and release [defendants] from liability relating to the patents-at-issue."[6] *Id.* In denying the motion to dismiss, the Federal Circuit noted that there are no Federal Circuit cases "where a non-beneficiary third party has asserted a breach of a contract that successfully triggered

---

[6] Zebra has taken discovery from Main Street, but Zebra cites no evidence that it could *actually* get a license or other relief from Main Street.

remedial provisions in the contract." *Id.*; *see also Tawes*, 340 S.W.3d at 425 ("[a]ll doubts must be resolved against conferring third-party beneficiary status."). Intellectual Tech could not find any since.

Because Zebra is not a party to these agreements, it should not be allowed to wield them against the express wishes of the parties to the agreements for Zebra's own benefit. This is another reason for the Court to deny Zebra's Motion.

**B.    In the Alternative, Intellectual Tech and Main Street Combined have Constitutional Standing.**

If the Court rejects all the arguments above and finds that Intellectual Tech alone lacks standing because Main Street still has exclusionary rights, the First Amended Complaint adds Main Street as a party to satisfy constitutional standing in the alternative. In that scenario, Intellectual Tech plus Main Street fall in *Morrow's* second category of plaintiffs. *Morrow*, 499 F.3d at 1340. Those are plaintiffs that "hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent." *Id.* In such an instance, the patentee is joined "for the purpose of avoiding the potential for multiple litigations and multiple liabilities and recoveries against the same alleged infringer." *Id.* In its prior orders, the Court held that Intellectual Tech's default under the Security Agreement transferred "exclusionary rights," including the ability to "forgive activities that would normally be prohibited under the patent statutes" to Main Street. IT-1 at Dkt. 144 at 12-13, n.4.; *Lone Star*, 925 F.3d at 1234 (*citing Morrow*, 499 F.3d at 1342) ("Exclusionary rights" involve the ability to exclude others from practicing an invention or to "forgive activities that would normally be prohibited under the patent statutes" through granting a license, for example.). But Main Street does not have all substantial rights to the patent. *See, e.g.*, *Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed.Cir.2010). Thus, Intellectual Tech, as the patentee, is joined with Main Street to provide standing. *Id.*

(concluding that a licensee was an exclusive licensee of a patent despite the licensor retaining the ability to license the patent to settle lawsuits); *see also Abbott Lab'ys v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (both patentee and licensee had standing where both could bring suit and license the asserted patents).

In this scenario, Main Street has suffered a constitutionally sufficient "injury-in-fact," and Intellectual Tech owns the patent, and must be included for standing purposes. *See, e.g.*, *Evident Corp. v. Church & Dwight Co.,* 399 F.3d 1310, 1313-14 (Fed.Cir.2005) (party with the right to license "would be injured by any party that made, used, or sold that patented" invention but patentee should be joined for standing).[7]

The principles governing jointly owned patents confirm that Intellectual Tech and Main Street have standing, even if they both can be said to have the right to license. By default, each co-owner of a patent may unilaterally license the patent to whomever it wishes. *Schering Corp. v. Roussel-UCLAF* SA, 104 F.3d 341, 344-45 (Fed. Cir. 1997). But the Federal Circuit has held that each co-owner has independent Article III standing to sue for infringement. *See id*. at 345 (co-owner's "right to license is not incompatible with [another co-owner's] unilateral right to sue"); *AntennaSys Inc. v. AQYR Techs., Inc.,* 976 F.3d 1374, 1376-78, 1381 (Fed. Cir. 2020). The Federal Circuit has held that a patent owner has Article III standing even if another owner actually "authorized [the defendant] to practice the [asserted] patent as a licensee." *AntennaSys,* 976 F.3d at 1378. It is true that all co-owners must generally be joined as plaintiffs in an infringement suit, just as OnAsset and Main Street would be joined here. *Id.*

Intellectual Tech and Main Street fall into *Morrow's* second category of plaintiffs and thus

---

[7] Intellectual Tech, as the patentee, believes it has suffered a constitutionally sufficient injury as well, but that is not required for it to have standing under *Morrow's* second class of plaintiffs.

have standing together to bring suit.

### C. In the Alternative, the Addition of OnAsset Ensures Prudential Standing.

Zebra previously argued that OnAsset was a necessary party for prudential standing purposes. Dkt. 9 at 12-15. Intellectual Tech disagrees. Dkt. 13 at 13-15. Zebra appears to have dropped that argument, but if this Court agrees with Zebra's original motion, OnAsset was added, in the alternative, to satisfy any prudential standing concerns.

### D. The First Amended Complaint is the Operative Complaint by Rule.

Intellectual Tech filed the First Amended Complaint as of right under Fed. R. Civ. P. 15(a)(1)(B). So the First Amended Complaint is now the complaint that is operative by law. *Casey v. Marathon Petroleum Co., LP*, No. SA-19-CV-00732-OLG, 2019 WL 11527904, at *1 (W.D. Tex. Aug. 6, 2019) ("Plaintiff's Amended Complaint was filed within 21 days of service of Defendant Marathon's Motion to Dismiss. Thus, Plaintiff's Amended Complaint was permitted as a matter of course under the Federal Rules, and it is the operative complaint in the litigation."). As the *Haddad Bros*. court properly found, such an amendment relates back when filed as of right and when it asserts the same claims even where a plaintiff is added to cure standing in a patent case. *Haddad Bros. Inc. v. Little Things Mean A Lot, Inc.*, No. 00CIV.0578(AGS), 2000 WL 1099866, at *2-3, 9-10 (S.D.N.Y. Aug. 4, 2000). So Zebra's argument that "a defect in Article III standing cannot be cured by the addition of a party" does not apply here. Plaintiffs are not seeking leave to amend to add a party, and the operative complaint includes all parties that might have standing. Zebra provides no authority to the contrary.[8]

---

[8] In an event, the Court could use its inherent power to manage its docket to address any issues with the timing of the First Amended Complaint. Nothing about the case turns on the date of filing. For example, there are no first to file or statute of limitations concerns that are normally at issue in relating back an amended complaint.

### E.    Intellectual Tech's Complaint Does Not Subvert the Court's Prior Order.

*Intellectual Tech II* is not a collateral attach on the Court's prior Order. First, the Court did not consider Intellectual Tech's objections and issue an Order in *Intellectual Tech I.* Magistrate Judge Gillam excluded certain theories and products from *Intellectual Tech I* via a Text Order. Intellectual Tech timely objected to the Magistrate's decision. Dkt. 143.[9] Rather than consider the Magistrate's decision and issue an Order, as required under the Local Rules,[10] the Court instead dismissed the case without prejudice. IT-1 at Dkt. 144. Because the Court never considered the Magistrate's decision it should have no preclusive effect here.

In any event, the weight of authority is on Intellectual Tech's side. Courts around the country routinely allow plaintiffs to file a new case with products or theories the court excluded in an earlier case. *See, e.g.*, *Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*, No. 15-CV-04525-EMC, 2016 WL 1623920, at *2 (N.D. Cal. Apr. 25, 2016); *Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am.*, LLC, No. CV 14-339-RGA, 2014 WL 3885939, at *2 (D. Del. Aug. 6, 2014)[11]; *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 12 C 3229, 2013 WL 361810, at *4 (N.D. Ill. Jan. 30, 2013); *Davis–Lynch, Inc. v. Hilcorp Energy Co .*, No. 6:09–CV–168, 2009 WL 10659687, at *2-3 (E.D. Tex. Nov. 18, 2009). That is for sound reason. In *Fujitsu*, the court held that it had

> ruled only that Fujitsu Limited could not amend the July 2008 Infringement
> Contentions at issue in the Texas Action and the November 2008 Infringement

---

[9] Zebra argues that "IT filed no objection or appeal of Magistrate Judge Gilliand's Order and cannot now challenge it." Motion at 20, n.4. This is not true; Intellectual Tech timely objected to the Magistrate's Order. IT-1 at Dkt. 143.

[10] Rule 4(a) of the Local Rules for the Assignment of Duties to United States Magistrate Judges, Appendix C of the Local Rules of the United States District Court for the Western District of Texas explains that "[a] judge of the court *shall* consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." (emphasis added); s*ee also* Federal Rules of Civil Procedure 72.

[11] *Vehicle Interface* is also persuasive in explaining why, contrary to Zebra's Motion, *Glitsch* does not apply. *Id.*at *2.

███████████

Contentions at issue in the Illinois Action. The court did not rule that Fujitsu Limited was forever barred from suing Tellabs for infringement based on newly-accused products. *In short, there is no implicit or explicit conflict between the court's earlier opinions and the allegations of Fujitsu Limited's New Complaint.*

*Fujitsu*, 2013 WL 361810, at \*4 (emphasis added). The same is true here, especially because the Court dismissed the first case without prejudice.[12] Everyone always understood that Intellectual Tech would file a new case requiring a new schedule, new discovery, and so on. *See, e.g.*, IT-1 at Dkt. 153 at ("IT cannot resuscitate this Action by resolving defects in its exclusionary rights, *see id.*, **but IT is entitled to cure those defects and refile this Action**.") (emphasis added).

Zebra's prejudice argument does not lead to a different result. The prejudice consideration in deciding whether to exclude theories and products is very limited. The *Davis-Lynch* discussed the narrowness of the inquiry and why it does not support Zebra's broad request:

> In its decision in the '07 suit, the Court did not evaluate prejudice to the parties in the context of Davis-Lynch being precluded from filing a subsequent lawsuit. Had that been the context, the Court would have weighed the prejudice to Davis-Lynch more heavily. Clearly, it would have more severely prejudiced Davis-Lynch to preclude it from *ever* seeking relief based on the additional products. By excluding the additional products, the Court's simply sought to preserve the focus and bounds of the '07 suit so that it could proceed efficiently to trial. … forever barring Davis-Lynch's claim for being a collateral attack would be inconsistent and unfair.

*Davis–Lynch*, 2009 WL 10659687, at \*2-3 (emphasis in original). Courts have consistently rejected arguments like Zebra's. The Court should follow this persuasive authority and do the same here.

The cases Zebra relies on are outliers and easily distinguishable on their facts. For example, Zebra relies on *Icon-IP*, which is not even followed within its own district. The *Avago* court expressly declined to follow the decision in *Icon-IP* and instead chose to follow the weight of authority as expressed in *Fujitsu. Avago*, 2016 WL 1623920, at \*2; *see also Finjan, Inc. v. Blue*

---

[12] Magistrate granted a motion to strike rather than deny leave to amend, but the result is the same.

*Coat Sys., LLC*, 230 F. Supp. 3d 1097, 1101-1102 (N.D. Cal. 2017) (following *Fujitsu* instead of *Icon*.). Even then, the basis for the court's ruling in *Icon-IP* is not present here. In *Icon-IP*, the court based its collateral attack ruling solely on the fact that the court "would have to consolidate that action with Icon I in the interest of judicial economy, as both actions involve the same patents and the same accused conduct. If consolidation occurred, then the Court's order excluding the products at issue from Icon I would be negated, and essentially reversed." *Icon-IP PTY Ltd. v. Specialized Bicycle Components, Inc.*, No. 13-CV-03677-JST, 2013 WL 10448869, at *2 (N.D. Cal. Oct. 22, 2013) (internal citations omitted). That is not true here. *See, e.g.*, *Vehicle Interface*, 2014 WL 3885939, at *3 (Finding *Icon-IP* is "unconvincing" because "this Court does not find that the filing of a second action, alleging similar patent infringement against different products, requires consolidation of the two actions. Accordingly, there would be no negating effect resulting from the Plaintiff filing a second claim."). The Court dismissed the first case without prejudice. Intellectual Tech is dismissing its appeal. There is nothing to consolidate. *Icon-IP* does not apply.

The same is true with *Orion*. Intellectual Tech could not find another case relying on and following the finding in *Orion*. *See, e.g.*, *Davis–Lynch,* 2009 WL 10659687, at *2-3 (expressly declining to follow *Orion*). In an event, *Orion* based its finding on the fact that "[w]hile Orion may disagree with the Court's ruling on the timeliness of its contentions, it must seek relief on appeal rather than filing another lawsuit." *Orion IP, LLC v. Home Depot USA, Inc.*, No. 2:05-CV-306, 2005 WL 8161153, at *2 (E.D. Tex. Oct. 7, 2005). Intellectual Tech tried to do just that when it filed objections to the Magistrate's Order. IT-1 at Dkt. 143. But the Court did not take up those objections under the Local Rules and instead dismissed the first case. It would be unfair for the Court to punish Intellectual Tech for that.

*Power Integrations* is a different animal altogether and has no bearing here. In fact, it is

not even clear what principle or proposition Zebra cites it for. The case does not appear in Zebra's Table of Authorities and the only citation is a short cite to the case for quotes that have nothing to do with the issue here. It appears to be a cut-and-paste gone wrong. Even so, *Power Integrations* says nothing about collateral attacks on prior orders. *See generally Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CIV. 08-309-JJFLPS, 2009 WL 2016436 (D. Del. July 9, 2009). In the end, the court stayed the part of the second case that overlapped with the first case pending resolution of the first case and allowed the rest of the case to proceed. *Id.* at *3-4. Zebra is asking for the non-overlapping portion of *Intellectual Tech II* to be dismissed, which departs from the finding in *Power Integrations*.

In the end, the facts and the weight of authority favors Intellectual Tech and counsels against dismissal.

## F. Court Should Deny Zebra's Duplicative Litigation Argument as Moot.

Intellectual Tech proposed to Zebra that the parties stipulate to dismissal of the appeal. Ex. A. As of this filing, Zebra has not responded to any of counsel's emails. In any event, Intellectual Tech is moving to dismiss the appeal once it has Zebra's position and will inform the Court when that is done. As a result, the Court should deny Zebra's duplicative litigation argument as moot just as it has in prior cases. *See, e.g.*, *EMA Electromechanics*, 2022 WL 1241967, at *4–5.

## G. Any Dismissal Should be Without Prejudice

Even if the Court rejects all of Plaintiffs' arguments above, it should still dismiss the case without prejudice because standing can be cured. *See Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332 (Fed. Cir. 2009) ("[T]he law universally disfavors dismissing an action with prejudice based on lack of standing, and there is a strong presumption that such a dismissal is improper."). The Fifth Circuit agrees. "Ordinarily, when a complaint is dismissed for lack of jurisdiction, including lack of standing, it should be without prejudice." *Williams v. Morris*, 614

F. App'x 773, 774 (5th Cir. 2015); *see also Perry v. Brassell*, No. W-18-CV-00062-ADA, 2018 WL 5733173, at *3 (W.D. Tex. Oct. 18, 2018) (This Court dismissed a case without prejudice "based on Fifth Circuit precedent" even though "this Court has a difficult time imagining anything that [plaintiff] could plead that would establish his constitutional standing.").

Zebra admits throughout its Motion that standing can be fixed here if the Court finds Intellectual Tech and Main Street's efforts to do just that have failed. *See, e.g.*, Motion at 1 (Admitting IT would have standing if it cured its defaults or Main Street waived its rights). For at least that reason, this case should not be dismissed with prejudice.

The Federal Circuit rejected Zebra's arguments based on *Sicom* and *Textile Productions* in *Univ. of Pittsburgh* because, as here, standing can be cured. 569 F.3d at 1333 ("Thus, our decisions in *Sicom* and *Textile Productions* are entirely consistent with this court's repeated statements that a dismissal for lack of standing should generally be without prejudice so as to permit the filing of a new action by a party with proper standing."). The same is true here; standing can be cured, as Zebra admits throughout its Motion. The general rule should thus prevail. If the Court finds standing has not been cured, it should dismiss the case without prejudice.

## V.     CONCLUSION

The Court should deny Zebra's Motion and find that Intellectual Tech has standing (constitutional and statutory) to bring this suit alone to enforce the '247 Patent. If the Court remains unconvinced, it should find that Intellectual Tech and Main Street or Intellectual Tech, Main Street, and OnAsset combined have constitutional and statutory standing to sue, as argued in the alternative in the operative First Amended Complaint. The Court should also deny Zebra's Motion claiming that that this case circumvents the Court's prior order. But if the Court decides dismissal is appropriate, it should be without prejudice.

Dated: October 19, 2022

Respectfully submitted,

/s/ James R. Perkins
Gary R. Sorden
Texas Bar No. 24066124
gsorden@coleschotz.com
Aaron Davidson
Texas Bar No. 24007080
adavidson@coleschotz.com
Brian L. King
Texas Bar No. 24055776
bking@coleschotz.com
James R. Perkins
Texas Bar No. 24074881
perkins@coleschotz.com
Vishal Patel
Texas Bar No. 24065885
vpatel@coleschotz.com

COLE SCHOTZ, P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2022, I had this document filed with the clerk of the court for the U.S. District Court, Western District of Texas, Waco Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ James R. Perkins
James R. Perkins