No. 2022-2207

# United States Court of Appeals for the Federal Circuit

INTELLECTUAL TECH LLC,

*Plaintiff - Appellant*

v.

ZEBRA TECHNOLOGIES CORPORATION,

*Defendant - Appellee*

Appeal from the United States District Court
for the Western District of Texas
No. 19-cv-628, Hon. Alan D. Albright

## BRIEF OF APPELLEE

| | |
|---|---|
| MORGAN, LEWIS & BOCKIUS LLP<br>   Amanda S. Williamson<br>   Karon N. Fowler<br>   James J. Kritsas<br>110 North Wacker Drive<br>Chicago, IL 60606<br>(312) 324-1000 | MORGAN, LEWIS & BOCKIUS LLP<br>   William R. Peterson<br>1000 Louisiana Street, Suite 4000<br>Houston, TX 77002<br>(713) 890-5188<br><br>MORGAN, LEWIS & BOCKIUS LLP<br>   Brent A. Hawkins<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br>(415) 442-1449 |

***Counsel for Appellee Zebra Technologies Corporation***

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2022-2207 |
| **Short Case Caption** | *Intellectual Tech LLC v. Zebra Technologies Corporation* |
| **Filing Party/ Entity** | Appellee / Zebra Technologies Corporation |

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

/s/ William R. Peterson

William R. Peterson
*Counsel for Appellee*
*Zebra Technologies Corporation*

Dated: April 24, 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if it are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Zebra Technologies Corporation | | BlackRock Inc. |

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

| Calvin M. Brien | Hersh H. Mehta (Formerly of Morgan, Lewis & Bockius LLP) | Elizabeth M. Chiaviello |
|---|---|---|
| Jason C. White | Kandis C. Gibson | Stephanie L. Roberts |

5. Related Cases.  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

*Intellectual Tech LLC v. Zebra Technologies Corp.*, Case No. 6:22-cv-00788-ADA (WDTX)

6. Organizational Victims and Bankruptcy Cases.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable

# TABLE OF CONTENTS

**Page**

Certificate of Interest ..................................................................................i

Table of Contents .....................................................................................iii

Table of Authorities ..................................................................................v

Statement of Related Cases .......................................................................1

Jurisdictional Statement ............................................................................2

Statement of the Issues .............................................................................3

Statement of the Case ...............................................................................4

Summary of the Argument .......................................................................12

Standard of Review .................................................................................14

Argument ................................................................................................15

I.    The District Court Correctly Held that IT Lacked Standing. .......................15

    A.    Article III Standing Requires Injury-in-Fact, Traceability, and Redressability. ..................................................................15

    B.    Because Main Street Had the Unfettered Right to License the '247 Patent, IT Lacked Article III Standing. ..........................17

        1.    After OnAsset defaulted, Main Street acquired the unfettered right to license the '247 Patent. ...............17

        2.    IT misreads the power of attorney. .........................19

        3.    Because of Main Street's unfettered right to license, IT could not exclude third parties from practicing the '247 Patent and thus lacked standing. ..............................24

# TABLE OF CONTENTS
(continued)

Page

a.    IT conflates constitutional standing and statutory standing.................................................................25

b.    IT's attempt to distinguish cases based on the "present grant" of rights is meritless. ............................27

c.    IT's challenge to the district court opinion in *Uniloc* is incorrect............................................28

C.    Main Street Had Exclusive Rights to License and Sell the '247 Patent, Not Merely the Right to License....................................29

Conclusion & Prayer for Relief ..............................................32

Certificate of Compliance with Rule 32(a)..............................34

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010) ...................................................14, 27

*Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*,
  604 F.3d 1354 (Fed. Cir. 2010) ...........................................................27

*Alps S., LLC v. Ohio Willow Wood Co.*,
  787 F.3d 1379 (Fed. Cir. 2015) ...........................................................16

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
  434 F.3d 1336 (Fed. Cir. 2006) ...........................................................26

*BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*,
  519 S.W.3d 76 (Tex. 2017)...................................................................21

*Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*,
  643 F. Supp. 2d 883 (S.D. Tex. 2008)..................................................22

*Comerica Bank-Tex. v. Tex. Commerce Bank Nat. Ass'n*,
  2 S.W.3d 723 (Tex. App.—Texarkana 1999, pet. denied)..................20

*H.R. Techs, Inc. v. Astechnologies, Inc.*,
  275 F.3d 1378 (Fed. Cir. 2002) ...........................................................16

*Hewlett-Packard Co. v. Acceleron LLC*,
  587 F.3d 1358 (Fed. Cir. 2009) ...........................................................14

*Holloway v. Skinner*,
  898 S.W.2d 793 (Tex. 1995) ................................................................20

*Impression Prods. v. Lexmark Int'l, Inc.*,
  581 U.S. 360 (2017)...............................................................................31

*Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
  248 F.3d 1333 (Fed. Cir. 2001) .....................................................24, 30

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Laredo Med. Grp. v. Lightner*,
    153 S.W.3d 70 (Tex. App.—San Antonio 2004, pet. denied)............................22

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) ....................................................................17, 31

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ..........................................................................25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................................16

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
    814 F.3d 1343 (Fed. Cir. 2016) ......................................................14, 17, 26, 30

*Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*,
    130 S.W.3d 170 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)..............22

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) .................................................................*passim*

*Nelson v. Consumers Cnty. Mut. Ins. Co.*,
    326 S.W.2d 535 (Tex. App.—San Antonio 1959, writ dism'd)........................22

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
    52 F.3d 1026 (Fed. Cir. 1995) ...........................................................................16

*Patterson v. Kentucky*,
    97 U.S. 501 (1878).............................................................................................31

*Prima Tek II, L.L.C. v. A-Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000) .........................................................................18

*Republic Ins. Co. v. Inverness Ests.*,
    252 S.W.2d 251 (Tex. App.—Fort Worth 1952, writ ref'd) .............................21

*S. Cnty. Mut. Ins. v. Sur. Bank, N.A.*,
    270 S.W.3d 684 (Tex. App.—Fort Worth 2008, no pet.)..................................21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000) ................................................................16, 27

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).........................................................................................16

*Uniloc 2017 LLC v. Google LLC*,
  508 F. Supp. 3d 556 (N.D. Cal. 2020)......................................................*passim*

*Uniloc USA, Inc. v. Apple, Inc.*,
  No. 18-cv-00358, 2020 WL 7122617 (N.D. Cal. Dec. 4, 2020) ......................30

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
  52 F.4th 1340 (Fed. Cir. 2022) ............................................................28, 29, 30

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
  No. 17-CV-1658, 2020 WL 7771219 (D. Del. Dec. 30, 2020) ........................27

*United States v. Ruiz*,
  536 U.S. 622 (2002)...........................................................................................2

*Walker v. Fed. Kemper Life Assurance Co.*,
  828 S.W.2d 442 (Tex. App.-San Antonio 1992, writ denied)...........................22

*WiAV Sols. LLC v. Motorola, Inc.*,
  631 F.3d 1257 (Fed. Cir. 2010) ................................................................14, 17

*Worley v. Loker Tobacco Co.*,
  104 U.S. 340 (1881).........................................................................................19

*Yale Lock Mfg. Co. v. Sargent*,
  117 U.S. 536 (1886).........................................................................................25

**STATUTES**

Durable Power of Attorney Act,
  Tex. Estates Code § 751.001 *et seq.* ...............................................................20
  Tex. Estates Code § 751.0015(1)......................................................................20
  Tex. Estates Code § 751.101 ............................................................................20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Patent Act,
    35 U.S.C. § 1 *et seq.* ..........................................................................31
    35 U.S.C. § 271(a) ............................................................................31
    35 U.S.C. § 281..................................................................15, 16, 26

Tex. Fin. Code § 342.504.....................................................................21

**RULES**

Fed. Cir. R. 47.5(a) ..............................................................................1

Fed. R. Civ. P.
    12(b)(1) ............................................................................................8, 9
    12(c) ....................................................................................................8

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), counsel for Zebra Technologies Corporation certifies that no other appeal in or from the underlying case has been previously before this or any other appellate court.

Pursuant to Federal Circuit Rule 47.5(a), the following pending case will be directly affected by this Court's decision in the pending case: *Intellectual Tech LLC v. Zebra Technologies Corp.*, No. 6:22-cv-00788-ADA (W.D. Tex).

## JURISDICTIONAL STATEMENT

The district court correctly determined that it lacked jurisdiction over IT's claims because IT lacked standing under Article III. It had the jurisdiction to make this determination because "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Appellee is otherwise satisfied with Appellant's jurisdictional statement.

## STATEMENT OF THE ISSUES

Whether the district court correctly dismissed Intellectual Tech LLC's patent infringement claim for lack of Article III standing.

### STATEMENT OF THE CASE

This appeal arises from Intellectual Tech LLC's attempt to sue Zebra Technologies Corporation for infringement of U.S. Patent No. 7,233,247 ("the '247 Patent") in October 2019. Intellectual Tech LLC's parent, OnAsset Intelligence, Inc., purported to assign the '247 Patent to Intellectual Tech LLC ("IT") in June 2017. Appx6-7; Appx312. But as the district court recognized, OnAsset could not transfer exclusionary rights to IT because those rights belonged to Main Street Capital Corporation as a result of OnAsset's default on a loan agreement ("the 2011 Loan Agreement"). Appx392; *see also* Appx229-237 ("the 2011 Patent and Trademark Security Agreement").

Although there is a complex history of rights and agreements between IT, OnAsset, and Main Street, Appx2, the district court's dismissal for lack of constitutional standing relied on the 2011 Patent and Trademark Security Agreement. Appx5-9; Appx13-15. IT raises on appeal narrow issues concerning (1) whether the transfer of exclusionary rights to Main Street deprived IT of constitutional standing; and (2) the meaning of the 2011 Patent and Trademark Security Agreement's power of attorney provision. Zebra thus focuses on the facts necessary to understand these issues.

### OnAsset and the '247 Patent

The '247 Patent is titled "Method and System for Employing RFID Tags in Automated Applications." Appx27. When the '247 Patent issued in 2007, its assignee was SAVR Communication, Inc. Appx27; Appx139. In 2008, SAVR Communications, Inc. assigned the '247 Patent to OnAsset. Appx139.

### OnAsset Pledges the '247 Patent as Collateral for a Loan

In April 2011, OnAsset and Main Street entered into the 2011 Loan Agreement, in which OnAsset borrowed $3 million from Main Street. Appx399. As security for this loan, OnAsset executed the 2011 Patent and Trademark Security Agreement, Appx229, which provided Main Street with a security interest in OnAsset's patents, specifically including the '247 Patent:

> 2. <u>Security Interest</u>. [OnAsset] hereby pledges, and grants to Secured Party a security interest (the "**Security Interest**"), for the ratable benefit of [Main Street], with power of sale to the extent permitted by law, in the Patents and in the Trademarks to secure payment of the Obligations.

Appx230; *see also* Appx229 (defining "Patents" as "including without limitation the patents listed on Exhibit A"); Appx236 (Exhibit A: listing U.S. Patent No. 7,233,247).

The Agreement defines "Patents" broadly, to include not only the patents themselves but also "licenses" and the right to seek damages:

> "**Patents**" means all of Debtor's right, title and interest in and to patents or applications for patents, fees or royalties with respect to each, and including without limitation the right to sue for past infringement and

damages therefor, and licenses thereunder, all as presently existing or hereafter arising or acquired, including without limitation the patents listed on Exhibit A attached hereto.

Appx229.

OnAsset promised that it would "not assign, transfer, encumber or otherwise dispose of the Patents or Trademarks, or any interest therein, without [Main Street's] prior written consent." Appx231. Otherwise, "so long as no Default exist[ed]," OnAsset could "control and manage the Patents and Trademarks, including the right to exclude others from making, using or selling items covered by the Patents." Appx232.

But the parties' rights changed significantly if a "Default" ("as defined in the [2011] Loan Agreement," Appx232) occurred. While a Default existed, Main Street—not OnAsset—had the right to "sell, assign, transfer, . . . or otherwise dispose of the Patents," including "enforc[ing] the Patents . . . and any licenses thereunder":

> 6. <u>Remedies</u>. While a Default exists, [Main Street] may, at its option, take any or all of the following actions:
>
> (a) [Main Street] may exercise any or all remedies available under the Loan Agreement.
>
> (b) [Main Street] may sell, assign, transfer, pledge, encumber or otherwise dispose of the Patents and Trademarks.
>
> (c) [Main Street] may enforce the Patents and Trademarks and any licenses thereunder, and if [Main Street] shall commence any suit for such enforcement, [OnAsset] shall, at the request of [Main Street], do any and all lawful acts and

6

> execute any and all proper documents required by [Main Street] in aid of such enforcement.

Appx232.

In addition to requiring OnAsset to execute documents in aid of Main Street's rights, the 2011 Patent and Trademark Security Agreement expressly gave Main Street power of attorney to facilitate Main Street's "exercising its rights under Section 6":

> (j)    **Power of Attorney.**  To facilitate [Main Street's] . . . exercising its rights under Section 6, [OnAsset] hereby irrevocably appoints . . . [Main Street] as the attorney-in-fact of [OnAsset] with the right (but not the duty) from time to time while a Default exists to create, prepare, complete, execute, deliver, endorse or file, in the name and on behalf of Debtor, any and all . . . agreements and writings . . . necessary for [Main Street], while a Default exists, to enforce or use the Patents or Trademarks or to grant or issue any exclusive or non-exclusive license under the Patents or Trademarks to any third party[.]

Appx231-232.[1]

The 2011 Loan Agreement also gave Main Street the potential to possess unfettered authority over the '247 Patent: if a default occurred, Main Street had the right "to take control of, sell, lease, license or otherwise dispose of [OnAsset's collateral]," Appx488-489, including the '247 Patent.  Appx477.

---

[1] In addition to exercising the power of attorney to facilitate the exercise of its rights under Section 6, Main Street also could use the power of attorney to facilitate recovering money from OnAsset if, for example, Main Street was forced to incur costs to prevent abandonment of a patent.  *See* Appx231-232 (2011 Patent and Trademark Security Agreement §§ 3(h), (i), (j)).

Neither party has disputed that both agreements are governed by Texas law. Appx6 n.1; *see also* Appx233 (Texas choice-of-law clause); Appx466 (Texas choice-of-law clause).

### *OnAsset Defaults and, While the Default Exists, Assigns the '247 Patent to IT*

In April 2013, Main Street issued a notice of default to OnAsset. Appx6; Appx510-512. OnAsset's defaults included (i) failure to pay the debt and accrued interest; (ii) failure to deliver audited annual financial statements; and (iii) failure to comply with the loan agreement's earning requirements. Appx140. As the district court recognized, "There is no dispute that OnAsset defaulted." Appx6.

In June 2017, with the default still uncured, OnAsset and Main Street entered into a "forbearance agreement," which required that OnAsset attempt to monetize the '247 patent.[2] Appx6. OnAsset simultaneously formed a subsidiary, Appellant IT, to which it assigned the '247 Patent. Appx6-7; Appx312.

### *After IT Files Suit, Zebra Moves to Dismiss for Lack of Standing*

IT sued Zebra for infringement of the '247 Patent in October 2019. Appx8; Appx67. Zebra then moved to dismiss for lack of standing under Rule 12(b)(1) and Rule 12(c). Appx223. The district court denied the motion, finding that IT is "the

---

[2] The district court held "that the 2017 Forbearance Agreement did not act to revert Main Street's rights in the '247 patent to IT" and its terms "unequivocally provide that Main Street was merely forbearing 'any exercise and enforcement of such rights.'" Appx8. IT does not challenge this holding on appeal.

rightful owner of the '247 patent, retains the right to enforce the patent, and thus has constitutional and statutory standing." Appx300.

### *Zebra Successfully Renews Its Motion After Obtaining Discovery*

After the order denying its motion, Zebra conducted discovery into whether IT or OnAsset defaulted on the 2011 Loan Agreement and whether any defaults had been waived or cured. Appx332-333; Appx374-375. Zebra moved for summary judgment for lack of standing in view of the facts confirmed by this discovery. Appx302.

Discovery revealed that there were multiple defaults under the 2011 Loan Agreement and that the defaults still had not been cured or waived. Appx309. Because of these defaults, Zebra explained, "ownership in the '247 Patent—or, at the very least, all substantial rights in the '247 Patent—automatically transferred to, and remain with, Main Street and preclude IT from establishing constitutional or statutory standing." Appx309-310.

The district court granted-in-part-as-modified and denied-in-part-as-moot Zebra's motion, Appx2, which it treated as a renewed motion to dismiss under Rule 12(b)(1), Appx5.

The district court concluded that IT lacked constitutional standing when it filed this action because it lacked exclusionary rights under the '247 Patent. Appx13-15. Any rights transferred from OnAsset to IT in 2017 were "subject to

Main Street's rights under Section 6 of the 2011 Patent and Trademark Security Agreement" because of OnAsset's default in 2013. Appx8. "Main Street's possession of those rights was uninterrupted from at least April 9, 2013, when it issued its notice of default to OnAsset." Appx8.

The district court rejected IT's argument that it must have constitutional standing because "title to the '247 patent did not pass automatically" to Main Street on default. Appx9. Even if IT retained the title to the patent, "other rights in the '247 patent" passed to Main Street, and "the rights Main Street received deprived IT of those exclusionary rights critical to constitutional standing." Appx9.

Because it determined that IT lacked constitutional standing, the district court did not address Zebra's arguments regarding prudential standing. Appx15.

### *The District Court Denies IT's Motion for Reconsideration.*

IT moved for reconsideration, Appx581, which the court denied, Appx17. The district court explained that IT's briefing erroneously returned, "again and again, to whether Main Street . . . ever deprived IT of title to the '247 patent." Appx21. But, as the court explained, "[t]hat is not the critical question." Appx21.

The relevant question was "whether Main Street received rights upon IT's default that deprived IT—the undisputed title holder—of exclusionary rights." Appx21. With respect to that question, IT had not given the court "any reason to reconsider" its order dismissing the case. Appx23.

This appeal followed.  Appx611.

## SUMMARY OF THE ARGUMENT

The district court correctly held that IT lacked constitutional standing when it filed this action against Zebra in October 2019. IT did not hold the necessary exclusionary rights in the patent to meet the injury-in-fact requirement of Article III. Those exclusionary rights belonged to Main Street.

As the district court recognized, following the default, Main Street's rights in the '247 Patent included the unfettered right to license it to any third party, including Zebra. Main Street could exercise that right without limitation unless and until Main Street waived its rights or OnAsset cured its default—neither of which ever occurred. In arguing to the contrary, IT misreads the parties' agreement and the power of attorney granted to Main Street. Because Main Street had the unfettered right to license the '247 Patent, IT did not hold exclusionary rights. Without exclusionary rights, IT could not be injured by any alleged infringement.

In addition, the 2011 Patent and Trademark Security Agreement did not merely give Main Street the right to sublicense the '247 Patent. OnAsset's default transferred to Main Street the *exclusive* right to license. After the default, OnAsset (and IT) did not have the right to license a third party's making, using, or selling the patented invention, and those rights belonged to Main Street alone. As a result, regardless of the correctness of the *Uniloc* district court decision, IT lacked constitutional standing to assert claims for infringement.

12

On either ground, this Court should affirm the district court's judgment dismissing the case for lack of standing.

## STANDARD OF REVIEW

This Court reviews de novo the ultimate question whether IT had Article III standing. *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010). "To the extent [any] jurisdictional facts are in dispute, however, the findings of fact are reviewed for clear error." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (alteration in original); *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) (reviewing rulings on subject matter jurisdiction de novo and underlying factual findings for clear error).

To the extent the 2011 Patent and Trademark Security Agreement must be interpreted, the district court's interpretation of an unambiguous contract is a question of law reviewed de novo. *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1347 (Fed. Cir. 2016).

## ARGUMENT

## I.     The District Court Correctly Held that IT Lacked Standing.

The district court correctly held that IT lacked Article III standing when it sued Zebra in October 2019.

There are two ways to reach this conclusion, and this Court can affirm on either ground.  First, as the district court recognized, IT lacked standing because Main Street had the unfettered right to sublicense the '247 Patent.  Because IT had no right to exclude third parties from practicing the patent, it could not be injured by any third party's alleged infringement, and it lacked standing to enforce the patent.

Second, IT did more than allow Main Street to sublicense the '247 Patent; it transferred the right to license entirely to Main Street.  Following OnAsset's default, Main Street possessed the exclusive right to license the '247 Patent.  OnAsset—from which IT derived its rights—could manage the patent only "so long as no Default exist[ed]."  Appx232.  Even if granting a third party the unfettered right to sublicense a patent would not, on its own, deprive the patent owner of Article III standing, a patent owner who cannot license the patent necessarily lacks standing.

### A.     Article III Standing Requires Injury-in-Fact, Traceability, and Redressability.

Two types of standing are at issue in patent infringement suits: statutory and constitutional.  "Statutory" standing is governed by Section 281 of the Patent Act, which provides that only "a 'patentee' has standing to pursue a patent infringement

action." *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015) (citing 35 U.S.C. § 281; *H.R. Techs, Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002)).  This Court has held that the "patentee" for these purposes includes an entity with "all substantial rights" under the patent.  *E.g.*, *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) ("A party that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights.").

Although Zebra challenged IT's statutory standing, the district court did not address the issue and, if necessary, would need to do so on remand.  *See* Appx15 ("Given its holding as to constitutional standing, the Court need not address Zebra's prudential standing challenge.").  This appeal concerns constitutional standing, which derives from Article III's case-or-controversy requirement.  To possess constitutional standing, a plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Whether a party has standing to assert a claim for patent infringement depends on which of the "sticks from the bundle of patent rights" it possesses. *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995).

This Court recognizes that a party with the bundle's "exclusionary rights"—defined as "the right to prevent others from practicing the invention," *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007)—"suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue." *WiAV*, 631 F.3d at 1264–65.[3]

## B.    Because Main Street Had the Unfettered Right to License the '247 Patent, IT Lacked Article III Standing.

Here, IT lacked Article III standing because it lacked the right to prevent third parties from practicing the '247 Patent. Main Street had an unfettered right to license the patent to third parties.

### 1.    After OnAsset defaulted, Main Street acquired the unfettered right to license the '247 Patent.

As the district court recognized, as of October 22, 2019, when IT filed this action, "Main Street possessed an unfettered right to license the '247 patent." Appx13.

OnAsset's 2013 default triggered Main Street's rights under Section 6 of the 2011 Patent and Trademark Security Agreement. Appx232. While a default existed, Main Street had the right to "sell, assign, transfer, pledge, encumber or otherwise

---

[3] *See also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) ("[T]hose who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed."); *Luminara*, 814 F.3d at 1347 ("[O]nly parties with exclusionary rights to a patent may bring suit for patent infringement.").

dispose of [the] Patents." Appx232. Not only was "Patents" defined to include the patents themselves—including the '247 Patent—but it also included both the right to seek damages and "licenses." Appx229.

In addition, Section 3(j) empowered Main Street with the power of attorney "while a Default exists, to enforce or use the Patents or Trademarks or to grant or issue any exclusive or non-exclusive license under the Patents or Trademarks to any third party." Appx231-232. Similarly, under the 2011 Loan Agreement, if a default occurred, Main Street had the right "to take control of, sell, lease, **license** or otherwise dispose of [OnAsset's collateral]," Appx488-489 (emphasis added), including the '247 Patent, Appx477.

Under these provisions, once a default occurred, Main Street had the right— without any limit—to license the '247 Patent to third parties. *See* Appx22. OnAsset's consent was not required for Main Street to license the '247 Patent. Nor was there any limit on which (or how many) third parties to which Main Street could license the '247 Patent.

The district court correctly concluded that IT received the '247 Patent from OnAsset "subject to Main Street's rights." Appx8. As this Court has made clear, "an owner or licensee of a patent cannot convey that which it does not possess." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000) (citation omitted). It is a longstanding principle that "the assignee of a patent right takes it

subject to the legal consequences of the previous acts of the patentee." *Worley v. Loker Tobacco Co*., 104 U.S. 340, 344 (1881). Under these principles, when OnAsset assigned the '247 Patent to IT in June 2017, IT received only the rights that OnAsset possessed (and received thus it subject to Main Street's rights).

Main Street continued to possess the right to license the '247 Patent through the date that IT filed this action. Under the 2011 Patent and Trademark Security Agreement, Main Street's rights would revert only if Main Street waived them or OnAsset cured its default—neither of which occurred. Appx8; Appx316; Appx550-551. As a result, when IT filed this action in October 2019, Main Street still possessed the unfettered right to license the '247 Patent. Appx8.

IT, in other words, had no monopoly over practicing the '247 Patent. The district court correctly held that "Main Street's rights deprived IT of an exclusionary right at the time IT filed this Action." Appx13.

### 2.    IT misreads the power of attorney.

IT argues that Main Street did not obtain an unfettered right to license the '247 Patent because any exercise of Main Street's right under the power of attorney would be "in the name of and on behalf of" IT pursuant to Section 3(j) of the 2011 Patent and Trademark Security Agreement. IT Br. 13-15, 18-21.

Relying on Texas cases involving the power of attorney and general rules regarding agency, IT contends that because Main Street could "only act 'in the name

and on behalf of' Intellectual Tech, . . . Intellectual Tech has not given up any exclusionary rights." IT Br. 18 (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995), for the proposition that the acts of an agent are the acts of a principal).

IT is incorrect. Texas law recognizes that a power of attorney may be used for different purposes. For example, one case cited by IT involved the use of a power of attorney to manage the affairs of disabled or incapacitated persons. *See Comerica Bank-Tex. v. Tex. Commerce Bank Nat. Ass'n*, 2 S.W.3d 723, 725 (Tex. App.—Texarkana 1999, pet. denied) (discussing the "Durable Power of Attorney Act," which allows for a "springing" power of attorney that commences when the principal becomes disabled); Tex. Estates Code § 751.001 *et seq.* (Durable Power of Attorney Act).

But this case involves an entirely different use of a power of attorney. Here, a creditor (Main Street) was given a power of attorney so that the creditor could protect its own rights. The Durable Power of Attorney Act—and its imposition of a fiduciary duty, Tex. Estates Code § 751.101—do not apply to these transactions. *See* Tex. Estates Code § 751.0015(1) ("This subtitle applies to all durable powers of attorney except: (1) a power of attorney to the extent it is coupled with an interest in the subject of the power, including a power of attorney given to or for the benefit of a creditor in connection with a credit transaction[.]"). OnAsset gave a power of attorney to Main Street, a creditor, in connection with a credit transaction.

This is not uncommon.  Texas law allows creditors to protect themselves using a power of attorney that is triggered upon a default.[4]  *E.g.*, *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 78 (Tex. 2017) ("The agreement between BankDirect and Plasma Fab included a power-of-attorney clause that gave BankDirect authority, upon Plasma Fab's default, to cancel the insurance policy, collect the unearned premiums from Scottsdale, and apply them to the loan balance."); *S. Cnty. Mut. Ins. v. Sur. Bank, N.A.*, 270 S.W.3d 684, 686 (Tex. App.—Fort Worth 2008, no pet.) ("Scotts Temple appointed Surety Bank its 'attorney-in-fact . . . with full authority upon any default to cancel [the Policy] . . . and receive all sums resulting therefrom.'" (omissions and alterations in original)); *Republic Ins. Co. v. Inverness Ests.*, 252 S.W.2d 251, 252 (Tex. App.—Fort Worth 1952, writ ref'd) ("Paragraph 7 of the assignment empowers the Bank to act as attorney in fact for Prendergast 'for and in our behalf in notifying the Insurance Company of a default and demanding cancellation of the policy[.]'").  In these circumstances, the creditor is using the power of attorney to protect its own interests and its own rights, not at another's direction and not to protect another's rights.

---

[4] There are limits on the use of powers of attorneys granted in a credit agreement. For example, "A lender may not take a confession of judgment or a power of attorney authorizing the lender or a third person to confess judgment or to appear for a borrower in a judicial proceeding." Tex. Fin. Code § 342.504.

21

Under Texas law, even where a power of attorney exists, where there is no control, there is no agency relationship:

> It is essential to an agency relationship, however, that the principal have the right to "assign the agent's task and to control the means and details of the process by which the agent will accomplish the task." Thus, even if a person acts for and on behalf of another, if he is not under the other person's control, an agency relationship does not exist. The agreements between the parties contain provisions that make LMG Lightner's attorney-in-fact for the collection of fees. Although the appointment of an attorney-in-fact ordinarily creates an agency relationship, there is no agency relationship here because there is no evidence LMG was under Lightner's control.

*Laredo Med. Grp. v. Lightner*, 153 S.W.3d 70, 72 (Tex. App.—San Antonio 2004, pet. denied) (en banc) (quoting *Walker v. Fed. Kemper Life Assurance Co.*, 828 S.W.2d 442, 452 (Tex. App.-San Antonio 1992, writ denied)) (internal citations omitted).[5]

---

[5] *See also Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 177 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("While Brass and its representatives had Moni Pulo's limited power of attorney to conduct all banking activities, this did not make them Moni Pulo's agents for jurisdictional purposes; there is no evidence it could control or direct any of their actions, and the documents taken as a whole (including the power of attorney) indicate just the opposite."); *Cardinal Health Sols., Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 886, 892 (S.D. Tex. 2008) (holding, as a matter of law, that no agency relationship existed despite a power of attorney for the "purposes of ordering and purchasing controlled substances on [a health care facility's] behalf"). Such a power of attorney is irrevocable: "[T]his power [of attorney] was coupled with an interest in the subject matter. The contract shows on its face that it is a power invested in the mortgagee for the purpose of safeguarding its own interest and cannot be revoked by the principal or mortgagor." *Nelson v. Consumers Cnty. Mut. Ins. Co.*, 326 S.W.2d 535, 538 (Tex. App.—San Antonio 1959, writ dism'd).

This analysis applies directly to the facts of this case. Upon the occurrence of a default, Main Street immediately acquired rights over OnAsset's patents, including the right to "sell, assign, transfer, pledge, encumber or otherwise dispose of the Patents," Appx232; to "enforce the Patents . . . and any licenses thereunder," Appx232; and to "sell, lease, license or otherwise dispose of [them]," Appx488-489 ("Loan Agreement"); *see also* Appx232 (allowing Main Street "to exercise any or all remedies available under the Loan Agreement").

The 2011 Patent and Trademark Security Agreement granted Main Street a power of attorney so that Main Street could protect Main Street's rights, *i.e.*, "[t]o facilitate [Main Street's] . . . exercising its rights under Section 6." Appx231. The Agreement does not grant OnAsset (or its subsidiary Appellant IT) any control over Main Street's exercise of its power of attorney, and such control would be inconsistent with the power of attorney's purpose to allow Main Street to protect Main Street's interests and exercise Main Street's rights under Section 6.

IT misunderstands the significance of Main Street's rights under Section 6 of the 2011 Patent and Trademark Security Agreement and the power of attorney. Following the Default, Main Street had the right to "enforce," "sell, assign, transfer, pledge, encumber or otherwise dispose of the Patents" (where "Patents" is defined to include the '247 Patent), grant licenses to the '247 Patent, and sue for infringement of the '247 Patent. The power of attorney merely facilitates Main Street's

23

enforcement of these rights. Following the default, Main Street possessed the unfettered right to license the '247 Patent, not subject to any control or limitation by IT or its parent, OnAsset.

### 3. Because of Main Street's unfettered right to license, IT could not exclude third parties from practicing the '247 Patent and thus lacked standing.

As the district court explained, the right of Main Street to license the patent "deprived IT of an exclusionary right at the time IT filed this Action." Appx13. Because any third party (including Zebra) "had the 'ability to obtain' a license to the '247 patent from Main Street," "IT could not have an exclusionary right against Zebra sufficient to engender Article III standing here." Appx13-14.

IT did "not hold the necessary exclusionary rights," so it was "not injured by a party that makes, uses, or sells the patented invention." *Morrow*, 499 F.3d at 1341. It thus fails to "meet the injury in fact requirement" necessary for constitutional standing. *Id.* at 1340-41.

Because it had no ability to prevent or restrict Main Street from licensing the patent to third parties, IT was in effectively the same position as a nonexclusive licensee and thus "suffer[ed] no legal injury from infringement." *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001); *see also id.* (holding that the patent owner's "right to grant similar licenses to other entities" means that a licensee lacks "constitutional standing" to sue for infringement).

The lack of redressability confirms the absence of standing. Because of Main Street's unfettered right to license the patent, IT cannot recover damages and, thus, any alleged injury it suffers would not be redressable. Patent infringement damages "assess 'the difference between [the patentee's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (quoting *Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536, 552 (1886)).

Here, because IT does not practice the patent, any damage model proffered by IT could only be based on a reasonable royalty. But IT cannot recover damages under this model. Because Zebra (or any other third party) could have negotiated a license from (and paid a royalty to Main Street), IT cannot prove that its financial condition would have been better if (alleged) infringement had not occurred, *i.e.*, that there is a "difference between [IT's] pecuniary condition after the infringement, and what [its] condition would have been if the infringement had not occurred.'" *Lucent*, 580 F.3d at 1324. Because IT cannot recover damages (the only form of relief it seeks), any alleged injury could not be redressed. IT lacks standing under both the injury and redressability requirements.

### a.    IT conflates constitutional standing and statutory standing.

As it did before the district court, IT erroneously conflates constitutional and statutory standing, focusing on title to the patent.

IT contends that the district court erred in determining that "Zebra could have obtained title to the '247 Patent from Main Street" because the court also determined that Main Street did not exercise the right to take title to the '247 Patent.  IT Br. 17-18.  But the district court's holding was not based on Zebra obtaining title—it was based on "Main Street possess[ing] an unfettered right to license the '247 patent."  Appx13.

Similarly, IT relies on *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336 (Fed. Cir. 2006), to argue that "[p]atent owners have standing even where a third party has a 'virtually unfettered right to sublicense' the patent in suit."  IT Br. 22.  But *Aspex* addresses statutory standing under Section 281, not Article III standing.  434 F.3d at 1339.  Neither "injury" nor "Article III" appear in the opinion.

Statutory standing does not equate to Article III standing.  An entity holding legal title to a patent that does not have the right to exclude others from practicing the claimed invention lacks Article III standing.  *Luminara*, 814 F.3d at 1347 ("Under our precedent, only parties with exclusionary rights to a patent may bring suit for patent infringement."); *Morrow*, 499 F.3d at 1339 ("The party holding the exclusionary rights to the patent suffers legal injury in fact under the statute.").  "[P]arties are free to assign some or all patent rights as they see fit based on their

interests and objectives, [but] this does not mean that the chosen method of division will satisfy standing requirements." *Morrow*, 499 F.3d at 1341 n.8.[6]

### b. IT's attempt to distinguish cases based on the "present grant" of rights is meritless.

IT attempts to distinguish several cases relied on by the district court by arguing that they involved a "present grant" and "immediate transfer of rights." *See* IT Br. 18-21 (discussing *Uniloc 2017 LLC v. Google LLC*, 508 F. Supp. 3d 556 (N.D. Cal. 2020); *Uniloc USA, Inc. v. Motorola Mobility LLC*, No. 17-CV-1658, 2020 WL 7771219 (D. Del. Dec. 30, 2020); *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010)).

IT's arguments are meritless. When OnAsset defaulted, the 2011 Patent and Trademark Security Agreement granted (and immediately transferred) rights in the '247 Patent to Main Street. The transfer was not merely "an agreement to assign rights in the future." *Abraxis*, 625 F.3d at 1364 (citing *Speedplay*, 211 F.3d at 1253). When the default occurred, the rights were actually transferred. IT cannot distinguish the cases on this ground.

---

[6] *See also Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) ("[A]lthough all the various rights available under the patent are initially held by the named inventor or inventors, they may, as a result of licensing agreements and assignments, become separated and be held by multiple individuals.").

> **c.    IT's challenge to the district court opinion in *Uniloc* is incorrect.**

IT also relies heavily on Judge Lourie's separate opinion in *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340 (Fed. Cir. 2022), arguing that IT "did not lose Article III standing even if the Court finds that Main Street could license the '247 Patent on its own."  IT Br. 23-25.

In *Uniloc*, Judge Lourie wrote separately to provide additional views.  52 F.4th at 1350-1352.  His separate opinion mentions "Article III standing" only in quoting the opinion of the court.  *Id.* at 1351.  The separate writing does not analyze whether the requirements for Article III standing are satisfied by a patentee who grants a third party an unfettered right to sublicense.

Much of the separate writing concerns the contractual effect of a non-exclusive license:

> The grant of a non-exclusive license with the right to sublicense, as here, gives the licensee the right to sublicense others.  But the patentee still retains the right to sue unlicensed infringers.  A non-exclusive license only grants a licensee freedom from suit; it does not divest the licensor of its right to sue or license other parties, or to practice the patent itself.

*Id.* at 1351.  This is an accurate description of the contractual effects of non-exclusive licenses (although, as detailed below, it is not true of the agreement between OnAsset and Main Street).  But Judge Lourie's separate writing—like IT's brief—does not analyze the interaction of these contractual provisions with the

Constitution's requirements for standing. As set forth above, the district court correctly considered the injury requirement and held that because Main Street had the unfettered right to license the '247 Patent, IT could not have suffered an injury-in-fact that would give rise to Article III standing to sue for patent infringement.

### C.     Main Street Had Exclusive Rights to License and Sell the '247 Patent, Not Merely the Right to License.

Moreover, this Court need not address whether merely granting a license with the unfettered right to sublicense would deprive a patentee of standing. The rights granted to Main Street in the 2011 Patent and Trademark Agreement upon OnAsset's default go far beyond the right to sublicense.

OnAsset (and eventually IT) had the right to "control and manage the Patents and Trademarks, including the right to exclude others from making, using or selling items covered by the Patents" only "so long as no Default exist[ed]." Appx232. But after the default, OnAsset lost those rights, and Main Street possessed the sole authority to "sell, assign, transfer, pledge, encumber or otherwise dispose of the Patents," Appx232, a term defined to include selling licenses and seek damages, Appx229.

Main Street was thus nothing like the non-exclusive licensee discussed in Judge Lourie's *Uniloc* separate writing. Main Street—not IT—possessed "the right to sue unlicensed infringers." *Uniloc*, 52 F.4th at 1351 (Lourie, J., separate writing). Upon default, the 2011 Patent and Trademark Security Agreement "divest[ed] [IT]

of its right to sue or license other parties," *id.*, transferring that right to Main Street. And, unlike Fortress's sublicensing rights in *Uniloc*, which still required Uniloc's consent, Main Street's licensing rights were completely unconstrained. *See Uniloc USA, Inc. v. Apple, Inc.*, No. 18-cv-00358, 2020 WL 7122617, at *7 (N.D. Cal. Dec. 4, 2020) (explaining that Fortress agreed "to seek the Unilocs' consent before granting sublicenses that would impose financial burdens on them").

Even if a patentee possesses constitutional standing after granting another party the unfettered right to sublicense, a patentee undeniably lacks standing where—as here—it grants another party the exclusive right to license (and the right to sell the patent entirely). *See id.* (distinguishing exclusive and non-exclusive licensees).

As this Court has consistently explained, it is the violation of the exclusionary rights in a patent that constitutes the injury-in-fact necessary for Article III standing. *Luminara*, 814 F.3d at 1347 ("Under our precedent, only parties with exclusionary rights to a patent may bring suit for patent infringement."); *Morrow*, 499 F.3d at 1339 ("Constitutional injury in fact occurs when a party performs at least one prohibited action with respect to the patented invention that violates these exclusionary rights," and "[t]he party holding the exclusionary rights to the patent suffers legal injury in fact under the statute."); *Intell. Prop.*, 248 F.3d at 1346 ("A party . . . that has the right to exclude others from making, using, and selling an

invention described in the claims of a patent is constitutionally injured by another entity that makes, uses, or sells the invention."); *Lone Star*, 925 F.3d at 1234 ("We have recognized that those who possess 'exclusionary rights' in a patent suffer an injury when their rights are infringed.").

The right to exclude is the legal right to prevent others from practicing the patent. *Impression Prods. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 374 (2017) ("The right to use, sell, or import an item exists independently of the Patent Act. What a patent adds—and grants exclusively to the patentee—is a limited right to prevent others from engaging in those practices."); *Patterson v. Kentucky*, 97 U.S. 501, 507 (1878) ("The sole operation of the statute is to enable him to prevent others from using the products of his labors except with his consent."). That exclusionary right underscores the very definition of patent infringement: "whoever *without authority* makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention … infringes the patent." 35 U.S.C. § 271(a) (emphasis added).

When the "owner" of a patent has transferred the right to license the patent to another, the owner no longer has the ability to exclude others from making, using, offering to sell, selling, or importing into the United States the patented invention. Those third parties could no longer acquire a license from the owner, and the "owner" does not suffer injury in fact when third parties infringe. It is only "[t]he

party holding the exclusionary rights to the patent" that "suffers legal injury in fact under the statute." *Morrow*, 499 F.3d at 1339.

For these reasons, regardless of the correctness of the *Uniloc* district court decisions, OnAsset's default under the 2011 Patent and Trademark Security Agreement deprived OnAsset (and thus IT) of Article III standing.

## CONCLUSION & PRAYER FOR RELIEF

This Court should affirm the district court's judgment dismissing the case for lack of standing.

In the alternative, if this Court disagrees with the district court's conclusion regarding constitutional standing, this Court should remand for the district court to consider Zebra's arguments regarding statutory standing.

Dated:  April 24, 2023                    Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:   */s/ William R. Peterson*

William R. Peterson
1000 Louisiana Street, Suite 4000
Houston, TX 77002

Amanda S. Williamson
Karon N. Fowler
James J. Kritsas
110 North Wacker Drive
Chicago, IL 60606

Brent A. Hawkins
One Market, Spear Street Tower
San Francisco, CA 94105

*Counsel for Appellee Zebra Technologies Corporation*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,502 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14 point font.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Appellee*
*Zebra Technologies Corporation*

Dated: April 24, 2023