2022-2207

---

# United States Court of Appeals
## For the Federal Circuit

---

INTELLECTUAL TECH LLC,
*Plaintiff-Appellant*

*v.*

ZEBRA TECHNOLOGIES CORPORATION,
*Defendant-Appellee*

---

**Appeal from the United States district court for the Western District of Texas
Case No. 6:19-cv-00628-ADA**

---

## PLAINTIFF-APPELLANT'S REPLY BRIEF

---

Timothy J.H. Craddock
GARY R. SORDEN
COLE SCHOTZ, P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202

COUNSEL FOR PLAINTIFF-APPELLANT
INTELLECTUAL TECH LLC

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Intellectual Tech LLC certifies the following:

1.      The full name of every party or amicus represented by me is:

Intellectual Tech LLC

2.      The names of the real parties in interest represented by me are:

Intellectual Tech LLC

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Intellectual Tech LLC's parent company is OnAsset Intelligence, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

COLE SCHOTZ, P.C.: Aaron Davidson, Brian L. King, James R. Perkins, Vishal Patel, Niky R. Bagley, Gary R. Sorden, Timothy J.H. Craddock.

5.      Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

No other case is pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

6.      All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.

The instant appeal is neither a criminal case nor a bankruptcy case.

i

# TABLE OF CONTENTS

ARGUMENT ................................................................................................ 1

    1.    Zebra's response hinges on basic misstatements of law and fact. ........... 2

    2.    Without foreclosure, Main Street did not have "the exclusive right to license the '247 Patent." ........................................................................ 10

    3.    Intellectual Tech, as patent owner, has constitutional standing. .......... 15

    4.    Main Street could not assign the '247 Patent to Zebra......................... 17

    5.    Without foreclosing, Main Street could only act on the '247 Patent "in the name of and on behalf of" Intellectual Tech.................................. 19

    6.    Intellectual Tech's injuries are redressable through a reasonable royalty, just like for any other patentee............................................................. 23

CONCLUSION............................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Abraxis Bioscience, Inc. v. Navinta LLC,*
   625 F.3d 1359 (Fed. Cir. 2010) ............................................................... 17

*Aspex Eyewear, Inc., et al. v. Miracle Optics, Inc.,*
   Case 2:01-cv-10396-MMM-CWX, Dkt. 301 (C.D. Cal. Feb. 10,
   2004) ..................................................................................................... 5, 16

*BankDirect Cap. Fin., LLC v. Plasma Fab, LLC,*
   519 S.W.3d 76 (Tex. 2017) ...................................................................... 21

*Beneplace, Inc. v. Pitney Bowes, Inc.,*
   No. A-15-CV-65-LY-ML, 2016 WL 11582933 (W.D. Tex. Nov. 4,
   2016) ....................................................................................................... 12

*FilmTec Corp. v. Allied–Signal, Inc.,*
   939 F.2d 1568 (Fed.Cir.1991) ................................................................. 17

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
   582 F.3d 1288 (Fed. Cir. 2009) ................................................................. 2

*Georgia-Pac. Corp. v. U.S. Plywood Corp.,*
   318 F. Supp. 1116 (S.D.N.Y. 1970) ......................................................... 24

*Golden Bridge Tech., Inc. v. Nokia, Inc.,*
   527 F.3d 1318 (Fed. Cir. 2008) ................................................................. 2

*Intell. Tech LLC, et al. v. Zebra Tech. Corp.,*
   Case No. 6:22-cv-00788-ADA, Dkt. 14, 1-4 (W.D. Tex. Oct. 5, 2022) .......... 14, 15

*Laredo Med. Grp. v. Lightner,*
   153 S.W.3d 70 (Tex. App.—San Antonio 2004, pet. denied) (en
   banc) ........................................................................................................ 22

*Lucent Techs., Inc. v. Gateway, Inc.,*
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................. 8

iii

*Pandrol USA, LP v. Airboss Ry. Prod., Inc.,*
    320 F.3d 1354 (Fed. Cir. 2003) ............................................ 16

*S. Cnty. Mut. Ins. v. Sur. Bank, N.A.,*
    270 S.W.3d 684 (Tex. App. 2008, no pet.) ......................... 19

*Sicom Sys., Ltd. v. Agilent Techs.,*
    427 F.3d 971 (Fed. Cir. 2005) ................................................ 7

*Stickle v. Heublein, Inc.,*
    716 F.2d 1550 (Fed. Cir. 1983) ...............................9, 23, 24

*Tawes v. Barnes,*
    340 S.W.3d 419 (Tex. 2011) ............................................... 12

*Uniloc 2017 LLC v. Google LLC,*
    No. 2021-1498 ....................................................................... 11

*Uniloc USA, Inc. v. Motorola Mobility LLC,*
    2021 WL 2071231 (Fed. Cir. May 18, 2021) ................... 6, 16

*Uniloc USA, Inc. v. Motorola Mobility LLC,*
    2022 WL 280898 (Fed. Cir. Jan. 25, 2022) ......................... 5

*Uniloc USA, Inc. v. Motorola Mobility LLC,*
    52 F.4th 1340 (Fed. Cir. 2022) ................................... *passim*

## Statutes

35 U.S.C. § 284 ............................................................................ 9

Insurance Code section 651.161 ............................................... 21

Tex. Fin. Code § 342.005 .......................................................... 21

Tex. Fin. Code § 342.504 .......................................................... 20

# ARGUMENT

Intellectual Tech, as patent owner, has constitutional standing to sue Zebra for infringement. Main Street's option to act as attorney-in-fact "in the name and on behalf of" Intellectual Tech does not deprive Intellectual Tech of that standing. Zebra makes two arguments in response to Intellectual Tech's appeal. Both are unavailing.

First, Zebra argues the district court was correct in holding that Intellectual Tech lacked standing because Zebra could obtain a license, via assignment of the '247 Patent, from Main Street. Zebra Resp. at 12. Not so. First, Main Street could not assign the '247 Patent to Zebra because it did not have title. So any assignment to Zebra would be "in the name of and on behalf of" Intellectual Tech. Second, Intellectual Tech has constitutional standing as the patent owner, so even if Main Street could be said to have the right to license the '247 Patent, "the patentee's grant of a license that includes the right to sublicense did not deprive the patent owner of Article III standing." *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1345 (Fed. Cir. 2022).

Second, Zebra argues, for the first time, that default "transferred the right to license entirely to Main Street," such that "Main Street possessed the exclusive right to license the '247 Patent." *Id.* Zebra did not raise this second

argument in the district court, so it was not considered by the district court, and has thus been waived. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) (new arguments will not be decided in the first instance on appeal).[1] But even if it is considered, Zebra's second argument fails on the merits. Without foreclosure, Main Street only had the option to act "in the name and on behalf of" Intellectual Tech. And everyone agrees Main Street did not exercise even this control.

### 1. Zebra's response hinges on basic misstatements of law and fact.

Zebra misstates the law of this Court and the basis for the district court's opinion. In doing so, Zebra just highlights why Intellectual Tech should prevail and the district court's decision should be reversed.

Before getting to the specific arguments Zebra makes and how they lack merit, it is worth discussing these misstatements and how and why they permeate Zebra's response brief.

---

[1] None of the "exemplary set of limited circumstances in which hearing arguments for the first time on appeal is appropriate" are present. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008).

**Misstatement No. 1.**     **"[T]he district court's holding was not based on Zebra obtaining title."**

Zebra argues that "the district court's holding was not based on Zebra obtaining title—it was based on 'Main Street possess[ing] an unfettered right to license the '247 patent.'" Zebra Resp. at 26. But the district court did not make this distinction. Instead, Main Street's "unfettered right to license" was premised on Main Street's "right to assign" the '247 patent.

As the district court explained, "[i]t could be argued that Main Street did not possess a right to license the '247 Patent because Section 6 of the 2011 Patent and Trademark Security Agreement does not explicitly provide for a right to license." APPPX000013, n.4. Undeterred, the district court held that "Section 6 did, however, expressly provide a right to assign," so "Zebra could have obtained title to the '247 Patent from Main Street, effectively licensing all of Zebra's past and ongoing accused conduct, thereby depriving IT of constitutional standing just as if Main Street had an unconditional right to license." *Id.* So contrary to Zebra's response, the district court based its holding on Zebra obtaining title directly from Main Street.

Zebra wants to run from the district court's analysis because Main Street did not have title to assign to Zebra. And as Zebra concedes elsewhere in its

response, "an owner or licensee of a patent cannot convey that which it does not possess." Zebra Resp. at 18, *quoting Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000).

But contrary to Zebra's response brief, the district court did premise its order on Main Street's purported ability to assign the '247 Patent to Zebra.

> **Misstatement No. 2.**  **"*Aspex* addresses statutory standing under Section 281, not Article III standing."**

Zebra argues that "IT erroneously conflates constitutional and statutory standing," by relying on *Aspex*, which Zebra contends "addresses statutory standing under Section 281, not Article III standing." Zebra Resp. at 25-26. No so.

This Court just reiterated in *Uniloc* that in *Aspex* "we held that the patentee's grant of a license that includes the right to sublicense did not deprive the patent owner of Article III standing." *Uniloc*, 52 F.4th at 1345 (*citing Aspex Eyewear, Inc. v Miracle Optics, Inc.*, 434 F.3d 1336, 1339-44 (Fed. Cir. 2006) and

*Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1358-63 (Fed. Cir. 2010)).[2]

The Court's description of its holding in *Aspex* matches the district court's ruling that was on appeal. The district court held that "Aspex did not possess Article III standing at the beginning of the suit" and thus "Aspex lacked constitutional standing." *Aspex Eyewear, Inc., et al. v. Miracle Optics, Inc.*, Case 2:01-cv-10396-MMM-CWX, Dkt. 301 at 14, 27 (C.D. Cal. Feb. 10, 2004).

Zebra argues throughout (more than 20 separate times) that Main Street has the unfettered right to license the '247 Patent. But under *Aspex*, even if true, that does not deprive Intellectual Tech of constitutional standing. Thus, Zebra is left to try to argue that *Aspex* "addresses statutory standing under Section 281, not Article III standing." But this Court just rejected that argument in *Uniloc*, which undermines Zebra's response at almost every turn.

---

[2] The parties disputed whether *Aspex* concerned constitutional or statutory standing. *Uniloc USA, Inc. v. Motorola Mobility LLC*, 2022 WL 280898, *5 (Fed. Cir. Jan. 25, 2022) ("Motorola urges that *Aspex* concerned only *statutory* authority to sue, not *constitutional* standing.") (emphasis in original). This Court sided with Uniloc, clarifying that *Aspex* concerned constitutional standing.

**Misstatement No. 3.      Judge Lourie's separate opinion was not about Article III standing.**

Zebra also tries to argue that Judge Lourie's separate opinion in *Uniloc* was not about Article III standing because he only mentions "Article III standing" in quoting the opinion of the Court. Zebra Resp. at 28. Again, not so.

In fact, the whole dispute in *Uniloc* was over Article III standing, as shown by Uniloc's "Statement of the Issues." *Uniloc USA, Inc. v. Motorola Mobility LLC*, 2021 WL 2071231, *1 (Fed. Cir. May 18, 2021) ("Whether Uniloc, ... had standing under Article III of the Constitution to sue for infringement of the patent. ... Whether the district court erred in concluding that Uniloc lacked Article III standing ...").

As Judge Lourie said, "it is clear that Uniloc still had the right to sue unlicensed infringers after it granted the license." *Uniloc*, 52 F.4th at 1351. In other words, Uniloc had Article III standing even if Fortress could also sublicense the patents at issue.

**Misstatement No. 4.**    **"When the 'owner' of a patent has transferred the right to license the patent to another, the owner no longer has the ability to exclude others from making, using, offering to sell, selling, or importing into the United States the patented invention."**

Zebra makes this misstatement at the bottom of page 31 of its response. But again, this Court said the opposite in *Aspex*, which it just reiterated in *Uniloc*. "[T]he patentee's grant of a license that includes the right to sublicense did not deprive the patent owner of Article III standing." *Uniloc*, 52 F.4th at 1345. Consistent with that holding, Judge Lourie added that the "the patentee still retains the right to sue unlicensed infringers." *Id.*

And the "right to sue is the means by which the patentee exercises the right to exclude others from making, using, and selling the claimed invention." *Sicom Sys., Ltd. v. Agilent Techs.*, Inc., 427 F.3d 971, 979 (Fed. Cir. 2005) (internal quotations omitted).

**Misstatement No. 5.**     **Intellectual Tech cannot recover damages because it does not practice the patent, so its injuries are not redressable.**

Simply put, Zebra's argument is that no patent owner that does not also practice the patent can recover damages, and thus no such patent owner has constitutional standing. Zebra Resp. at 24-25 ("Here, because IT does not practice the patent, any damage model proffered by IT could only be based on a reasonable royalty. But IT cannot recover damages under this model."). That is not the law.[3]

Zebra depends solely on *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1324 (Fed. Cir. 2009) for this argument. Zebra Resp. at 24-25. But *Lucent* involved a dispute between competitors and does not apply here by its own terms. 580 F.3d at 1324 ("As the Supreme Court has framed the general issue of determining damages, *at least for competitors ...*") (emphasis added).

In fact, this Court long ago rejected Zebra's exact argument, holding that "damages to the patent holder cannot simply be calculated in all cases by determining 'the difference between his pecuniary condition after the

---

[3] Zebra seems to contradict itself by arguing that Main Street could have received a reasonable royalty, but Main Street, an investment bank, doesn't practice the patent either. Zebra Resp. at 25.

infringement, and what his condition would have been if the infringement had not occurred.'" *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1560–61 (Fed. Cir. 1983). This Court rejected Zebra's argument because it would mean that in "the absence of exploitation by the patent holder, no damages would be awardable. This result would be contrary to the express statutory provision that the patent holder shall be awarded 'no less than a reasonable royalty for the use made of the invention by the infringer.'" *Id*; *see also* 35 U.S.C. § 284 which makes clear that "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."

Like any other patentee, even ones that do not practice the patent, Intellectual Tech is entitled to an amount "no less than a reasonable royalty" for Zebra's infringement.

***

These misstatements are woven throughout Zebra's response brief and make up the only real arguments for affirming the district court's order. But they just highlight that the only way to uphold the district court's order below is to rewrite the opinion and reverse this Court's prior holdings. Rather than

ask this Court to do so openly, Zebra chose to present the facts and law as they wish they were, not as they are.

There is no support for affirming the district court's order dismissing the case without prejudice because Intellectual Tech lacked constitutional standing. This Court should thus reverse the district court's order and remand this case for further proceedings.

**2.    Without foreclosure, Main Street did not have "the exclusive right to license the '247 Patent."**

Zebra argues, for the first time, that not only did Intellectual Tech lack standing, but while in default Intellectual Tech had no ability to license the '247 Patent. Zebra Resp. at 29-32. That is not true.

First, Zebra's argument to the district court was always that Intellectual Tech lost standing because Zebra could *also* get a license from Main Street. APPX000147-48 ("If Zebra 'has the ability to obtain . . . a license from another party with the right to grant it,' such as Main Street, then Intellectual Tech 'does not have an exclusionary right with respect to the alleged infringer and thus is not injured by that alleged infringer.'"). But as discussed above, this Court reiterated in *Uniloc* that "that the patentee's grant of a license that includes the right to sublicense did not deprive the patent owner of Article III

standing." *Uniloc*, 52 F.4th at 1345. Judge Lourie added that the "grant of a non-exclusive license with the right to sublicense, as here, gives the licensee the right to sublicense others. But the patentee still retains the right to sue unlicensed infringers." *Id.* Both the majority opinion and Judge Laurie's separate writing reflect the fact that this Court has never held that a patent owner loses the right to enforce its own patents just because a third-party could grant a license to the defendant. *See, e.g.*, *Uniloc 2017 LLC v. Google LLC*, No. 2021-1498, Oral Argument at 27:13 (Fed. Cir. September 6, 2022) (available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1498_09062022.mp3).

Thus, Zebra's argument to the district court that Intellectual Tech lost standing because Zebra could *also* get a license from Main Street fails. For that reason, Zebra had to come up with this new argument, that only Main Street could license the '247 Patent and thus Intellectual Tech lacked standing. But this new argument is wrong on the merits as well.

Zebra's new argument hinges on one section of one agreement taken out of context and read contrary to the intent of the parties. It is improper to cut up and parse a contract that way under Texas law.

Under Texas law, "[w]hen discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (internal citations and quotations omitted). "The court reiterates that '[w]here an unambiguous writing has been executed between the parties, the courts will enforce the intention of the parties as expressed or apparent in the writing.'" *Beneplace, Inc. v. Pitney Bowes, Inc.*, No. A-15-CV-65-LY-ML, 2016 WL 11582933, at *7 (W.D. Tex. Nov. 4, 2016)) (*quoting Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982)).

The intent of the parties is clear from the agreement. Without default, things would proceed as normal, as if the agreement did not exist. APPX000232. Then while a default exists, Main Street had three options: 1) foreclose on the secured assets and take possession of the '247 Patent via execution of a "present grant" assignment; 2) act under Sections 3(j) and 6 of 2011 Patent and Trademark Security Agreement "in the name and on behalf of" Intellectual Tech as attorney-in-fact related to the '247 Patent; or 3) do

nothing and proceed as normal as if the agreement did not exist. APPX000231-32.

Zebra's Motion ignores both the law and Main Street's full range of options in relying on Section 4 alone, and out of context, to argue that Main Street had the exclusive right to license '247 Patent when Intellectual Tech was in default.

> 4.  <u>Debtor's Use of the Patents and Trademarks</u>. Debtor shall be permitted to control and manage the Patents and Trademarks, including the right to exclude others from making, using or selling items covered by the Patents and Trademarks and any licenses thereunder, in the same manner and with the same effect as if this Agreement had not been entered into, so long as no Default exists.

APPX000232.

First, this clause does not mean that Intellectual Tech lost control on default. As Section 6 on the same page makes clear, "[w]hile a Default exists" Main Street "may, *at its option*" take the prescribed actions. APPX000232 (emphasis added). So default did not automatically transfer control from Intellectual Tech to Main Street. It merely gave Main Street certain options that it didn't have without default, including the right to do nothing and allow Intellectual Tech to proceed as if there were no default—the option Main Street chose.

Zebra's argument, if adopted, would strip Main Street of the flexibility it bargained for in the agreement, harming Main Street in the process by

upholding the dismissal of this lawsuit. Main Street is an investment bank; they are not in the direct business of exploiting or monetizing patents. Zebra continually argues as though it is representing Main Street's interests and interpreting the agreement to that end. But Main Street sought and received the necessary flexibility it desired to protect its investment, as it saw fit, should default occur. That flexibility includes the option to do nothing and let matters continue on course as it did here with Intellectual Tech enforcing the '247 Patent through this lawsuit. Rather than respect the agreement and Main Street's interests and bargained for flexibility, Zebra asks this Court to interpret the agreement to the sole benefit of a complete stranger to the agreement, Zebra. That is improper.

Second, Zebra's argument is contradicted by Zebra's own arguments in a subsequent case filed by IT.[4] There, Zebra, in moving to dismiss for lack of

---

[4] Intellectual Tech and Main Street entered into a clarification of rights agreement to make clear the parties' intent all along was for Intellectual Tech to have and maintain standing absent foreclosure and refiled suit. *Intell. Tech LLC, et al. v. Zebra Tech. Corp.*, Case No. 6:22-cv-00788-ADA, Dkt. 14, 1-4 (W.D. Tex. Oct. 5, 2022). Zebra moved to dismiss, arguing the CRA changed nothing and that neither Intellectual Tech nor Main Street had Constitutional standing. *Id.* at Dkt. 27. The parties fully briefed the issue (*Id.* at Dkt. 27, 25, 34), but the Court stayed its determination pending additional guidance from this Court in this appeal. *Id.* at Dkt. 48. Intellectual Tech cites the public versions of these documents for ease of reference. Nothing material to the points Intellectual Tech makes are hidden in the redactions.

standing, argued that "Main Street also does not hold sufficient exclusive rights to confer [Article III] standing because Zebra can obtain a license from another party, IT." *Intell. Tech LLC, et al. v. Zebra Tech. Corp.*, Case No. 6:22-cv-00788-ADA, Dkt. 27 at 9-10 (W.D. Tex. Oct. 5, 2022) ("[B]oth IT and Main Street have licensing rights to the '247 Patent by nature of their agreements. ... Because Zebra can obtain a license from either IT or Main Street, neither has suffered an injury to convey constitutional standing.").

So not only is Zebra making an argument it never raised in the district court, but it is also contradicting its own arguments made in another court on the same issue.

The Court should reject Zebra's new argument that Main Street alone could license the '247 Patent while there was a default. Not only was it not raised below, but it directly contradicts the intent of the parties as expressed in the agreement. Siding with Zebra would thwart the interests of the parties to the agreement, to the sole benefit of Zebra, a stranger to the agreement.

**3.    Intellectual Tech, as patent owner, has constitutional standing.**

Everyone agrees that Intellectual Tech owns the title to the '247 Patent. That is enough for Intellectual Tech to have standing, because "[e]stablishing ownership of a patent that has been infringed satisfies the requirements of

Article III standing." *Pandrol USA, LP v. Airboss Ry. Prod., Inc.*, 320 F.3d 1354, 1368 (Fed. Cir. 2003). And as the patent owner, Intellectual Tech has standing even if Main Street has a "virtually unfettered right to sublicense" the patent. *Aspex Eyewear, Inc. v. Miracle Optics*, Inc., 434 F.3d 1336, 1342 (Fed. Cir. 2006).

As discussed above, Zebra's argument that "*Aspex* addresses statutory standing under Section 281, not Article III standing" is wrong and was already rejected by this Court. *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1345 (Fed. Cir. 2022).

Zebra's argument that Judge Lourie's separate opinion in *Uniloc* was not about Article III is also wrong, as explained above. Again, the whole dispute in *Uniloc* was over Article III standing. *Uniloc*, 2021 WL 2071231, *1 ("Statement of Issues"). Zebra's act of searching for the words "Article III standing" is a poor substitute for analyzing the issues in the case and what Judge Laurie wrote.

So contrary to Zebra's entire argument and the district court's opinion, even if it "is true that [Main Street] could" grant Zebra "a sublicense, immunizing" it from suit, "that is a far cry from holding that the patent owner, simply by having granted a non-exclusive license with the right to sublicense, loses the power to sue an unlicensed infringer." *Id.*

The district court got this issue wrong, improperly relying on the district court opinion in *Uniloc*. This Court should reverse.

**4.    Main Street could not assign the '247 Patent to Zebra.**

The basis of the district court's ruling was that Main Street could assign Zebra the '247 Patent and thus effectively license Zebra's past and future infringement. APPX000013, n. 4 ("Zebra could have obtained title to the '247 patent from Main Street, effectively licensing all of Zebra's past and ongoing accused conduct, thereby depriving IT of constitutional standing just as if Main Street had an unconditional right to license."). That is legally incorrect.

The district court correctly held that Main Street did not have title to the '247 Patent. APPX000007-08; APPX000023 ("Main Street did not receive title to the '247 patent on default."). Zebra does not dispute that. Intellectual Tech has not assigned the '247 Patent to anyone and thus still owns title to the '247 Patent. Zebra does not dispute that either.

So Main Street cannot legally assign the '247 Patent to Zebra without foreclosing and taking title, which it did not do. *See, e.g.*, *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365 (Fed. Cir. 2010) ("At that time AZ–UK could not assign the patents because it did not possess their titles."); *FilmTec Corp. v. Allied–Signal, Inc.*, 939 F.2d 1568, 1572 (Fed.Cir.1991) (stating that the

purported assignment is a nullity if the assignor had nothing to assign). As Zebra even concedes in its response, "an owner or licensee of a patent cannot convey that which it does not possess." Zebra Resp. at 18, *quoting Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000) (citation omitted). Main Street could not assign title to the '247 Patent to Zebra without foreclosing. It has not foreclosed, so title remains with Intellectual Tech, meaning Zebra could only obtain title from Intellectual Tech.

As discussed above, Zebra tries to sidestep this issue by arguing that "the district court's holding was not based on Zebra obtaining title." Zebra Resp. at 26. That is not true. While the district court says that "Main Street possessed an unfettered right to license the '247 patent," the analysis for that statement comes in a footnote basing the ruling on Zebra obtaining title to the '247 Patent directly from Main Street. APPX000013, n.4.

In sum, Main Street "did not receive title to the '247 patent on default," did not foreclose on the '247 Patent, and thus could not assign the '247 Patent to Zebra. Nor did Intellectual Tech ever assign the '247 Patent to anyone else before or after default. The district court's order was thus based on a legal impossibility and should be reversed.

5.   **Without foreclosing, Main Street could only act on the '247 Patent "in the name of and on behalf of" Intellectual Tech.**

Intellectual Tech's point about the power-of-attorney provision is simple. Without foreclosing, Main Street could only act on the '247 Patent "in the name of and on behalf of" Intellectual Tech as "attorney-in-fact" under the agreement of the parties. Thus any action of Main Street's, acting under power-of-attorney, would be the action of Intellectual Tech. Zebra's response misses the mark with irrelevant discussion of insurance and finance codes and fiduciary duties.

As agreed by the parties to the agreement, without foreclosure, Main Street could only act "in the name of and on behalf of" Intellectual Tech to license or assign the '247 Patent. Even the district court eventually, but reluctantly, agreed. APPX000022-23 ("During default, Main Street may assign or license the '247 patent to Zebra or anyone else, it may just have to do so in IT's name.").

Zebra does not dispute that is what the agreement says or that "[w]hen construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *S. Cnty. Mut. Ins. v. Sur. Bank, N.A.*, 270 S.W.3d 684, 688 (Tex. App. 2008, no pet.).

Because Main Street did not foreclose on the '247 patent, it could not license or assign the '247 patent in its own name. Thus any license Zebra could have supposedly secured from Main Street, would have come from Intellectual Tech. For instance, the license would have to have been signed in Intellectual Tech's name, but there is no such license.

Zebra's effort to rewrite the agreement by analogy to different arrangements in separate (mostly insurance related) agreements fails. For example, Zebra calls the 2011 Patent and Trademark Security Agreement a "credit agreement," which Zebra says does not allow Main Street "to appear for a borrower in a judicial proceeding." Zebra Resp. at n.4; Tex. Fin. Code § 342.504 ("A lender may not take a confession of judgment or a power of attorney authorizing the lender or a third person to confess judgment or to appear for a borrower in a judicial proceeding."). But the 2011 Patent and Trademark Security Agreement specifically allows Main Street, at its option, to act as attorney-in-fact to "commence suit" to enforce the '247 Patent, which would require Main Street "to appear for a borrower in a judicial proceeding." APPX000232. So by Zebra's own admission in footnote 4, the 2011 Patent and Trademark Security Agreement is not a "credit agreement."

Separately, Chapter 342 of the Texas Finance Code that Zebra relies on does not apply here at least because the 2011 Patent and Trademark Security Agreement was not "extended primarily for personal, family, or household use to a person who is located in this state at the time the loan is made." Tex. Fin. Code § 342.005.

The types of insurance agreements and "cancel and collect" clauses that Zebra's brief relies on (Zebra Resp. at 21) are different in kind from the agreement here and are governed by their own rules under the Texas Insurance Code that do not apply to the 2011 Patent and Trademark Security Agreement. *See, e.g., BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 79 (Tex. 2017) ("The issue is simply stated: Did BankDirect properly exercise its authority under Insurance Code section 651.161 when it cancelled Plasma Fab's insurance policy?"). For example, the Texas Insurance Code includes an express, statutory provision for a limited power-of-attorney, that is much narrower than the provision in the agreement here. Tex. Ins. Code § 651.161 ("A premium finance agreement may contain a power of attorney that enables the insurance premium finance company to cancel any or all of the insurance contracts listed in the agreement as provided by Section 651.161."). But even then,

the action of cancelling the policy is still being done "in the name of and on behalf of" the insured. And that is the point here.

Lastly, the issue is not whether Main Street would owe Intellectual Tech a fiduciary duty in opting to act as attorney-in-fact under the agreement, as discussed in *Laredo Med. Grp. v. Lightner*, 153 S.W.3d 70 (Tex. App.—San Antonio 2004, pet. denied) (en banc) ("We hold that LMG owed no duty of good faith and fair dealing to Lightner."). For one, Main Street never opted to act as "attorney-in-fact," so they have not undertaken a role that might implicate such a duty. Second, any such dispute would not impact Zebra and would not impact the issues to be decided in this appeal. And any such a dispute that might arise would have to be between Intellectual Tech and Main Street.

In sum, Zebra provides no case law or support showing that Main Street could take any action on its own to license or assign the '247 Patent, absent foreclosure. And the agreement is clear that absent foreclosure, Main Street's option, should it choose to take it, was to act as "attorney-in-fact" "in the name of and on behalf of" Intellectual Tech consistent with general power-of-attorney principles. So any assignment or license Zebra could receive would be "in the name of and on behalf of" Intellectual Tech.

**6.    Intellectual Tech's injuries are redressable through a reasonable royalty, just like for any other patentee.**

Zebra argues that Intellectual Tech's injuries are not redressable because Intellectual Tech does not practice the patent. Zebra Resp. at 25. Not so.

As discussed above at pages 7-8 and shown in the comparison below, Zebra's argument is incorrect and based on an argument this Court rejected in 1983.

| Zebra | Patent infringement damages "assess 'the difference between [the patentee's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'"<br><br>Zebra Resp. at 25. |
| --- | --- |
| Federal Circuit | Contrary to [Zebra's] argument, damages to the patent holder cannot simply be calculated in all cases by determining "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred."<br><br>*Stickle*, 716 F.2d at 1560–61. |

Instead, Intellectual Tech, like any other patentee, must be awarded no less than a reasonable royalty for Zebra's infringement of the '247 Patent. *Id.*

The *Georgia Pacific* factors even consider whether the patentee practices the patent and the relationship between the patentee and the infringer as part of the hypothetical negotiation framework used to determine a reasonable royalty. For example, factor five considers the "commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Unless Zebra is granted a license, Intellectual Tech, as patentee, is entitled to an amount "no less than a reasonable royalty" for Zebra's infringement. Such a reasonable royalty provides redress for Intellectual Tech's injuries from Zebra's unauthorized infringement of the '247 Patent.

## CONCLUSION

As the patent owner, Intellectual Tech has constitutional standing to sue and maintain suit against Zebra. Main Street's option to act as attorney-in-fact "in the name and on behalf of" Intellectual Tech does not deprive Intellectual Tech of standing. This Court should thus reverse the district court's order and remand this case for further proceedings.

Dated: May 15, 2022

Respectfully submitted,

*/s/ Gary R. Sorden*
Timothy J.H. Craddock
Gary R. Sorden

COLE SCHOTZ, P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
tcraddock@coleschotz.com
gsorden@coleschotz.com
COUNSEL FOR APPELLANT
INTELLECTUAL TECH LLC

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on May 15, 2023, by electronic means using the CM/ECF System, which will serve via email notice of such filing to any of the following counsel registered as CM/ECF users:

William R. Peterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
william.peterson@morganlewis.com

Brent A. Hawkins
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
brent.hawkins@morganlewis.com

James John Kritsas
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
james.kritsas@morganlewis.com

Amanda Scott Williamson
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 500
Chicago, IL 60606
amanda.williamson@morganlewis.com

*Attorneys for Appellee Zebra Technologies Corporation*

Upon acceptance by the Court of the e-filed document, six (6) paper copies will be filed with the Court within the time provided in the Court's rules.

May 15, 2023                               _/s/ Gary R. Sorden_
                                          Gary R. Sorden

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e) in that it contains 5,223 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style type.

May 15, 2023                               _/s/ Gary R. Sorden_
                                          Gary R. Sorden